437 So.2d 1124 (1983)
STATE of Louisiana
v.
Vincent J. LAPRIME.
No. 82-KA-1021.
Supreme Court of Louisiana.
September 2, 1983.
Rehearing Denied October 7, 1983.
Concurring Opinion October 17, 1983.
*1125 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John F. Rowley, Dist. Atty., Wayne McDougall, Abbott Reeves, Asst. Dist. Attys., for plaintiff-appellee.
A. Scott Tillery, Tillery & Potts, Chalmette, for defendant-appellant.
MARCUS, Justice.
Vincent J. Laprime was charged by bill of information with simple burglary in violation of La.R.S. 14:62. After trial by jury, defendant was found guilty as charged[1] and was sentenced to serve eight years at hard labor. On appeal, defendant relies on ten assignments of error for reversal of his conviction and sentence. Eight of those assignments of error do not present reversible error nor do they involve legal issues not governed by clearly established principles of law. They will be treated in an appendix which will not be published but which will comprise part of the record in this case. The two remaining assignments of error deal with the state's impeachment of one of its own witnesses.

FACTS
On January 15, 1979, the residence of Mr. and Mrs. Edward Riggs, located at 3513 Meraux Lane in St. Bernard Parish, Louisiana, was burglarized. The burglary was discovered by Mrs. Riggs when she returned from work. Some money plus two handguns"a 22 magnum caliber manufactured by Colt firearms [and] a 22 long rifle caliber, two barrel Darrenger, over and under made in Italy"were reported stolen; the serial numbers of the handguns were given to the St. Bernard Sheriff's Office. Earlier that afternoon, Detective Ralph Carreras of the St. Bernard Sheriff's Office had received a call from an "unknown" person who informed Carreras that he had seen three subjects pulling a burglary at 3513 Meraux Lane. The informant gave Carreras the license number and a description of the car used by the burglars. Investigation showed the car was registered in the name of a Mrs. Granna.
In the early afternoon of the next day (January 16), two New Orleans Police Department officers on patrol received a call that some people were discharging firearms in a posted area off Paris Road in New Orleans East. Upon proceeding there, Daniel Luther and his partner observed two white males discharging firearms. The officers identified themselves and asked the men to drop their arms, whereupon defendant and his brother ran into the woods. The officers placed a call for assistance.
Among those responding to the call was Officer David Skevington. He observed defendant lying about fifteen feet inside the woods, apprehended him, read him his Miranda rights while walking him out of the woods, and turned him over to Officer Luther. Skevington then returned to the woods, "back along where the brush was beaten down" and about fifteen feet from where he had found defendant he recovered a "22 caliber blue steel revolver" stuck in the mud. Also recovered was a handgun described by Officer Luther as "a 22 caliber type Derringer made in Italy ... chrome plated ... missing both handles."
Officer Luther questioned defendant about the guns and defendant stated "the guns were hot from St. Bernard Parish." When asked what he meant by that statement, defendant said the guns "were stolen from a burglary in a residence in St. Bernard Parish." Officer Harold Buttone also questioned defendant and was told by him "from what he could understand the gun was taken from a burglary in St. Bernard."
After defendant was booked, Officer Luther contacted the St. Bernard Sheriff's Office and informed them that two weapons *1126 possibly taken in a residential burglary in that parish had been recovered. The physical descriptions and serial numbers of the weapons seized at the time of defendant's arrest were found to match those of the weapons taken from the Riggs' residence the day before.
Jeffery Granna, defendant's cousin and the son of the Mrs. Granna whose car had been used in the burglary, was arrested. He entered a plea of guilty to simple burglary. The facts read into the record at that time by the assistant district attorney stated that Granna had told the St. Bernard Sheriff's Office "that he along with Rickey and Vincent Laprime entered the house on Meraux and that he stood in the automobile while Vincent went in and got guns and money and also his share of the burglary was $14.00."
At defendant's trial, the state called Granna as a witness. Granna admitted he had pled guilty to having burglarized "that home on Meraux Lane" but denied any remembrance of the details of the burglary or that defendant had been with him. Over defendant's objection, the trial judge declared Granna a hostile witness and permitted the state to use the transcript of the hearing at the time he entered a guilty plea to impeach him. Thereafter, the transcript of the hearing was introduced in evidence without objection.

ASSIGNMENTS OF ERROR NOS. 8 AND 9
Defendant contends the trial judge erred in declaring Granna, a state witness, hostile and in permitting the state to impeach him with the transcript of the hearing at the time he entered a guilty plea to the same crime for which defendant was being tried. In any event, he argues that the transcript of the prior hearing should have been admitted only for impeaching purposes, not as substantive evidence of defendant's guilt.
When the state called Granna as its witness, he was asked if he had been convicted of simple burglary of the home of Edward Riggs at 3513 Meraux Lane, Meraux, Louisiana, on January 15, 1979. He responded, "I don't know what it was but I know I was convicted of something." When asked if he pled guilty to having burglarized "that home on Meraux Lane," he responded, "Yes, sir I pleaded guilty," but he then proceeded to deny any remembrance of the date, the place, what was taken, or whether defendant had been with him. The state requested that Granna be declared hostile on the ground that he had previously pled guilty to this particular burglary at which time he had admitted the specific facts, including defendant's participation in the crime, which he now did not remember. In addition, the witness had informed the state that he was unwilling to testify in this matter. Over defendant's objection, the trial judge declared Granna a hostile witness and permitted the state to use Granna's prior Boykinization to impeach him. The state then asked Granna whether he remembered the statement of facts read into the record by the assistant district attorney at the time of his Boykinization which included the fact that Granna had told the St. Bernard Sheriff's Office "that he along with Rickey and Vincent Laprime entered the house on Meraux and that he stood in the automobile while Vincent went in and got guns and money and also his share of the burglary was $14.00." Granna responded that he did not remember. The state then offered the record of Granna's Boykinization in evidence. The trial judge asked defense counsel if he had any objection. Defense counsel responded: "No objection, your Honor." The state then rested and the judge ordered that the exhibits be shown to the jury. The record of Granna's Boykinization shows that after the assistant district attorney had read the facts into the record, the trial judge questioned Granna as to whether either of the Laprimes had gone into the house while Granna remained in the car as he contended. Granna responded that "[he hadn't] seen them. It's around the back," but he admitted having received some of the funds from the burglary.
Either surprise or hostility will permit a party to impeach his own witness. La.R.S. 15:487; State v. Edwards, 419 So.2d 881 (La.1982). The settled rule in Louisiana *1127 is that when a witness other than the defendant is impeached by the admission of a prior inconsistent statement, the statement is admissible only on the issue of credibility and not as substantive evidence of the defendant's guilt. However, the defendant must specifically request that the trial judge give a limiting instruction to that effect or suffer the risk that the jury will credit the state's case with supplemental evidence which ought not be substantively considered. State v. Allien, 366 So.2d 1308 (La.1978); State v. Ray, 259 La. 105, 249 So.2d 540, 548 (1971) (on rehearing). Nonetheless, a defendant should not be convicted on the strength alone of such evidence. Allien, supra.
The record clearly shows that Granna was a hostile witness. State v. Edwards, supra; State v. Bradford, 367 So.2d 745 (La.1978). The trial judge therefore correctly ruled that the state could use Granna's prior Boykinization to impeach him. Defendant did not ask the trial judge to give an instruction limiting the evidence to the issue of credibility. He therefore took the risk that the jury would consider that evidence as substantive evidence of his guilt. However, defendant was not convicted on this evidence alone. Defendant was in possession of the guns stolen from the Riggs residence the day after the burglary and, when found with the guns, admitted to the police that "the guns were hot from St. Bernard Parish," having been stolen during the burglary of a residence. Clearly, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found defendant guilty of simple burglary beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Noble, 425 So.2d 734 (La. 1983).
Assignments of Error Nos. 8 and 9 are without merit.

DECREE
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, C.J., concurs.
LEMMON, J., concurs in the result and assigns reasons.
CALOGERO, J., dissents and assigns reasons.
CALOGERO, Justice, dissenting.
I respectfully dissent from only that portion of the majority opinion which finds sufficient other evidence[1] of the defendant's guilt of the crime of simple burglary.
The entire case against Laprime, excluding the transcript from Granna's guilty plea proceeding (impeachment evidence), consisted of the testimony of six witnesses: the burglary victim, four police officers and Granna. The victim and Officer Riggs identified the guns seized as those taken from the Meraux residence. Officer Carreras testified that an unknown caller phoned to report seeing the burglary committed at the Meraux address by three persons, and to report the license number of the vehicle used. That vehicle was registered in the name of Ms. Granna (mother of the witness, Jeffrey, Jr.). Ms. Granna was not arrested in the case. The other three officers testified about the shooting incident in New Orleans East, the arrest of the Laprime brothers and Granna, and the seizure of the guns. The final state witness was Jeffrey Granna, who admitted pleading guilty a year earlier to the burglary but who otherwise remembered no specifics of the crime or of any co-participants. The best that can be said concerning the state's case against defendant, excluding the transcript of the Boykin proceeding, is that Laprime was shown to have been in possession of, and firing stolen weapons, in an area in New Orleans East.
*1128 LEMMON, Justice, concurring.
In State v. Allien, 366 So.2d 1308 (La. 1978), this court reversed a conviction which was founded solely upon uncorroborated hearsay testimony, although the defendant had not objected to the admission of the evidence. The problem was one of sufficiency of evidence, and the decision stands for the proposition that completely uncorroborated hearsay evidence, consisting of the unsworn, out-of-court statement of a witness who later denies the truth of the statement, is not alone sufficient to sustain a conviction.[1]
Later, in State v. Boutte, 384 So.2d 773 (La.1980), the court distinguished Allien and recognized that "[o]rdinarily if hearsay evidence is admitted without objection, it becomes substantive evidence and may be used by the trier of fact to the extent of any probative or persuasive power that it has".[2] 384 So.2d at 776. See United States v. Pearson, 508 F.2d 595 (5th Cir.1975); United States v. Orrico, 599 F.2d 113 (6th Cir.1979).
This case is clearly distinguishable from Allien, because other evidence presented by the state substantially corroborated the unobjected to hearsay statement of the convicted co-offender, Granna.[3]
Defendant cannot now claim that the trial court erred in admitting the unobjected to hearsay.[4] C.Cr.P. Art. 841. Further, a reasonable juror, on the strength of the probative force of all of the state's evidence (including the hearsay), could have concluded that defendant's guilt was proved beyond a reasonable doubt.
NOTES
[1] Defendant was tried by a jury composed of six jurors, all of whom had to concur to render a verdict. La.Code Crim.P. art. 782(A).
[1] As the majority apparently concedes, the impeachment evidence in this case (the transcript of Granna's guilty plea proceeding containing the statement of facts by the assistant district attorney) is admissible only on the issue of credibility and not as substantive evidence.
[1] The issue in the present case is the probative value of unobjected to hearsay evidence, which is different from the more limited issue question of the probative value of prior unsworn inconsistent statements which are later repudiated under oath. I do not necessarily agree with the assertion in the majority opinion in Allien that prior inconsistent statements do not constitute substantive evidence. That issue, however, is not truly involved in this case, because the witness said nothing at trial which was inconsistent with his prior statements quoted in the guilty plea colloquy.
[2] In his dissent in Allien, Justice Marcus had asserted that "[h]earsay evidence not objected to constitutes substantive evidence". 366 So.2d at 1314. See also Chief Justice Sander's dissent in Allien. The real problem is the amount of weight to be accorded to such evidence in determining overall sufficiency.
[3] There was other evidence that defendant was a principal to the crime to which Granna pleaded guilty. Shortly after the burglary, defendant was found in possession of weapons stolen during the burglary. At the time of his arrest in Orleans Parish, defendant admitted to officers an awareness that the guns were fruits of a burglary in St. Bernard Parish.
[4] If defendant had objected to the hearsay nature of Granna's statements quoted in the guilty plea colloquy, then the district attorney could have taken other steps, such as warning Granna of the penalty for perjury and then questioning him further about the truth of the statements in the light of the warning. The record does not indicate (again, possibly, because of the lack of objection) whether the officers to whom Granna made his statement are still available.