445 So.2d 1293 (1984)
STATE of Louisiana, Plaintiff-Appellee,
v.
Geraldine FRUGE, Defendant-Appellant.
No. CR83-333.
Court of Appeal of Louisiana, Third Circuit.
February 1, 1984.
Writ Denied March 23, 1984.
*1294 Stewart Thomas, Jennings, Richard P. Ieyoub, Lake Charles, for defendant-appellant.
W. Gregory Arnette, Jr., Dist. Atty., W.J. Riley, III and Jacquelyne Heinen, Jennings, for plaintiff-appellee.
Before GUIDRY, CUTRER and STOKER, JJ.
STOKER, Judge.
Defendant, Geraldine Fruge, was indicted for the crime of theft in excess of five *1295 hundred dollars, a violation of LSA-R.S. 14:67. She was tried before a six person jury which found her guilty as charged. The trial judge sentenced her to five years at hard labor.
Defendant appeals on the basis of seven assignments of error; error No. 1 concerns the sufficiency of evidence, errors Nos. 2 through 4 concern specific errors committed during the course of the trial and also the conduct of the prosecutor, errors, Nos. 5 through 7 concern the sentencing proceedings and the sentence itself. We affirm her conviction and remand for resentencing.

FACTS
Geraldine Fruge was employed by the City of Jennings, Louisiana as a bookkeeper for the City Clerk's office from approximately July of 1979 to June of 1980. Her duties included counting and reconciling the daily cash receipts, posting these amounts in the daily cash journal, and preparing the daily bank deposit slips. She was responsible for seeing that the money received, the entries in the daily cash journal and the bank deposits corresponded.
An audit of the fiscal year of July 1, 1979 through June 30, 1980 revealed discrepancies between revenues and bank deposits. The auditors discovered, through a reconstruction and review of the books, a pattern in which on various days during the audit period there would be $100, $200 or $300 discrepancies between actual revenues and bank deposits.
A conservative estimate by one of the auditors put the total shortage between actual revenues and bank deposits at approximately $9,000.

ASSIGNMENT NO. 1
Defendant urges that the evidence presented was not sufficient to sustain her conviction of theft under LSA-R.S. 14:67 because it did not exclude every reasonable hypothesis of innocence. The State's case against defendant consisted primarily of circumstantial evidence.
The proper constitutional standard for appellate review of the sufficiency of the evidence to support a criminal conviction is that enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). For circumstantial evidence to convict, "it must exclude every reasonable hypothesis of innocence". LSA-R.S. 15:438. The Jackson standard is applicable in cases involving both direct and circumstantial evidence. State v. Smith, 441 So.2d 739 (La.1983); State v. Sutton, 436 So.2d 471 (La.1983). According to Sutton:
"An appellate court reviewing the sufficiency of evidence must resolve any conflict in the direct evidence by viewing the evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime."
Viewing the overall evidence in this manner, we find that there was sufficient evidence for the jury to conclude that Mrs. Fruge was guilty beyond a reasonable doubt.
Establishment of the State's case involved essentially two aspects (1) to prove that a theft of money occurred and (2) to prove that defendant was the thief. (See State v. Pittman, 368 So.2d 708 (La. 1979) concerning the elements of the crime of theft.) To prove that a theft of money occurred, the State relied on the testimony of two CPA's who performed the actual audit for the City of Jennings. By reconstruction and review of the City's books and records the CPAs discovered discrepancies between actual revenues and bank deposits. Amounts of money actually received by the City were never deposited at the bank. The discrepancies consisted of a pattern of shortages in actual revenues. Entries were made to make the books appear to be balanced indicating a cover up. These shortages were in round numbers of $100, $200 and $300 and occurred every few days. In their opinion, these shortages were explainable only as thefts.
*1296 To prove defendant was the thief, the State relied on the testimony of her former co-workers. This testimony revealed that defendant was in the unique position of knowing whether money was missing. Defendant, as bookkeeper, was responsible for counting and reconciling the daily cash receipts, posting these amounts to the daily cash journal and preparing the daily bank deposit slips. Defendant never reported any of the shortages discovered by the auditors. Additionally all the CPA's who testified as experts, both for the State and for the defense, agreed that due to the weak internal controls within the City's accounting system that defendant, as bookkeeper, was in a good position to steal City funds.
To be more specific concerning the evidence which the jury heard, but without detailing each transaction and the evidence evidencing the transactions, we will give the following summary. All of the transactions occurred over a period of approximately nine months. During the period defendant was not the only city employee who had access to the cash register used in receiving city revenues in the form of taxes, fees and various charges. These other employees were in a position to take money from the cash register and pocket it. However, defendant had control of the system and was in a position to know at the end of each day if there were any shortages. However, her records failed to disclose any of the shortages which, in increments generally of $100, $200 or $300, occurred on the average of four or five times a month to equal over $9,000. This amounts to an average of approximately $1,000 per month.
The cash register in question was equipped with what was referred to as an internal or permanent tape. Defendant had no access to this tape. A duplicate of the permanent tape was available to defendant at the end of each day. (Both tapes were referred to as "Z-out tapes," but as explained one was not available to defendant but the other was available to her on a daily basis at the end of each day.) The Z-out tape permitted defendant to compare the total sums rung up in a given day with the amount of cash and checks on hand at the end of the day. If the count showed more or less in cash and checks than the total shown on the daily Z-out tape, standard procedure called for a search for the error or discrepancy. Minor discrepancies of a few cents or dollars were tolerated.
Errors resulting in discrepancies could arise from errors in transactions such as overrings or underrings, giving the wrong change to a customer, receiving less than the amount supposed to be paid or checks being missing.
An overring or underring is the result of human error in either punching an amount in excess or less than the amount received. For example, if $132 was received but the operator hit the "two" key instead of the "one" key, the machine would ring up $232. If the overring was not noticed at the time, the total of funds in the cash register would show up $100 short when compared with the Z-out tape total.
In reconciling matters at the end of each day (or the following morning), any errors found would be noted on the daily Z-out tape for the day so as to bring the record reflected by the Z-out tape in accord with the receipts of revenues entered in the City's books. The City's books contained columns for overages and shortages. For any day in which there was a discrepancy between the total indicated by the daily Z-out tape and actual receipts on hand which could not be reconciled, it was defendant's duty to enter the amount of the discrepancy in the appropriate column as an overage or shortage. The actual receipts were then deposited in various banks and savings and loan accounts by the City Clerk. The bank deposit slips were made up by defendant and given to the City Clerk.
The discovery of the shortages involved in this case came to light when the City's auditors found that the daily totals in the City's books frequently showed incorrect totals. Significantly the daily Z-out tapes for the period in question were missing although the daily Z-out tapes for the periods *1297 before and after this period were preserved and were available. The auditors resorted to the internal or permanent cash register Z-out tapes to reconstruct what the daily totals shown on the daily Z-out tapes would have been. A consistent pattern of revenues exceeding deposits was disclosed and these were, as has been noted, generally in even hundred dollar amounts. In running the totals in the City's cash receipts journal the auditors found that the totals were incorrect. As incorrectly shown, the cash receipts journal entries (totals) agreed with the deposits, but the totals reconstructed from the internal Z-out tapes did not. Thus it appeared that, by entering incorrect totals in the City's cash receipts journal, the journal was made to agree with the deposits.
Presented with the above facts the jury was confronted with a pattern extending over the nine-month period in which there were frequent and numerous shortages in even hundred-dollar amounts. The shortages were not reflected on the cash receipts journal, but were covered by incorrect totals apparently designed to cover up the shortages. Also it was defendant who made the entries and it was she who reconciled the receipts with the totals shown on the daily Z-out tapes. Assuming that someone other than defendant did take cash from the register, defendant would know of it when she checked up on a daily basis. She could have protected herself by reporting significant shortages and by entering the shortages in the journals. In such a case, erroneous total entries would not have been necessary in order to have the totals in accord with the deposits.
On the basis of evidence reflecting the pattern outlined above the jury could have found defendant guilty as charged under the standard laid down in Jackson v. Virginia, supra. The evidence, direct and circumstantial, supports the jury's finding that defendant was guilty beyond a reasonable doubt. This assignment is without merit.

ASSIGNMENT NO. 2
Defendant urges that the trial court erred by improperly limiting the scope of the examination of various expert witnesses. In her brief, the defendant contends that the trial judge did not allow defense counsel to cross-examine expert witnesses pertaining to shortcomings in the accounting system used by the City at the time defendant was employed by the City. Defense counsel claims that by this testimony he could have shown that the accounting system was so complicated and deficient, that errors could easily have been made by defendant, as bookkeeper, thus establishing a reason for the shortages. This testimony was excluded because these experts had evaluated the City's accounting system at a time prior to the period for which defendant was indicted. Defendant claims that the rulings of the trial judge excluding this evidence was an abuse of discretion which seriously prejudiced her right to a fair trial.
Although defendant refers to "cross-examination" in her brief, the record indicates that the only time the trial judge limited this type of testimony was during the direct examination of defendant's own expert witnesses. In either case, defendant's assignment is without merit.
The record indicates that defense counsel was allowed to cross-examine at length the State's experts (the CPAs who performed the audit of the City's books during the time defendant was employed by the City) regarding the complexities and the shortcomings of the City's accounting system during that time period.
The record also indicates that defense expert witnesses (CPAs who had audited the City's books for periods prior to and after the time defendant was employed by the City,) were allowed to testify concerning the shortcomings of the City's accounting system during the periods that they audited the City's books. They were also permitted to give their opinions, as experts, on the shortcomings of the accounting system during the period defendant was employed by the City.
Defendant even admits in her brief that the experts for both the State and defense were permitted to testify concerning the *1298 shortcomings of the City's accounting system. This assignment is without merit.

ASSIGNMENTS NOS. 3 AND 4
By these assignments defendant urges that during her case in chief the trial judge caused and permitted prejudicial delay by (1) permitting the State to repeatedly make and argue groundless objections to questions posed to defense witnesses and (2) failing to rule promptly on these objections. The jury was removed on numerous occasions when these objections were made. Because the evidence was very complicated, demanding a coherent and orderly presentation to the jury, defendant claims that these allegedly needless interruptions and delays prevented her from obtaining a fair trial.
A trial judge is given wide discretion in controlling the conduct and orderly process of trial. His rulings in this respect will not be reversed absent an abuse of discretion. State v. Passman, 345 So.2d 874, 875 (La.1977); LSA-C.Cr.P. art. 17.
The record indicates that the trial judge did remove the jury several times during defendant's case in chief. This happened when the State objected to defense experts' testimony concerning shortcomings in the City's accounting system for the year during which defendant was employed by the City. The basis for the objections were that the experts had no personal knowledge of shortcomings during this period.
The trial judge alone is vested with the responsibility of determining the admissibility of evidence. In each instance, the jury was removed so that the judge could properly rule on the admissibility of this evidence without prejudicing the jury. Under these circumstances, and especially in view of the complexities of proof in a case such as this, we find no abuse of discretion.
While the State may have been over-zealous in making objections, there is neither evidence that the jury was influenced by the interruptions complained of nor that they contributed to the verdict. No prejudice has been shown which would warrant a reversal. This assignment is without merit.

ASSIGNMENTS NOS. 5, 6, & 7
These three assignments of error concern defendant's sentence. Defendant urges that the trial judge erred in (1) failing to give due weight and consideration to the findings and recommendations contained on the presentence investigation report, (2) failing to comply with the requirements of LSA-C.Cr.P. art. 894.1 and (3) imposing an excessive sentence.
The trial judge sentenced defendant to five years at hard labor. In the words of the trial court the reasons given for sentence were (1) "those that are set forth in 894.1A" (2) "... that the Defendant still maintains that she did not take this money..." (3) "... there's no question in the Court's mind as to your guilt. This was a systematic taking, amounted to $100.00, $200.00, $300.00, almost every other day..." and (4) "It is also the history of this Court that jail or penitentiary time is given for embezzlement without exception, ...". No other reasons were given by the judge.
The presentence investigation report concluded with recommendations from the Mayor of Jennings, the present City Clerk, the City Attorney and the investigation officer who prepared the report. They all agreed that defendant should receive a suspended sentence and be placed on probation. Restitution and counseling were also recommended. The report indicates that defendant is forty-five years old and a life-long resident of Jennings. She is married and has four children, the youngest of whom is twelve and still lives at home. Another daughter, dying of cancer, has left with her whereabouts unknown and defendant is taking care of that daughter's two young children. Although defendant has no prior criminal record, adult or juvenile, she admits to taking money from a former employer but states the money was repaid the following week. She reports having had two "nervous breakdowns" for which she was treated twenty three years ago. She attends church regularly and has taught religion for ten years.
A sentence within statutory limits may still violate defendant's constitutional *1299 right against excessive punishment. A trial court is given wide discretion in imposing a sentence within statutory limits and such a sentence should not be set aside as excessive absent an abuse of discretion. State v. Bing, 410 So.2d 227 (La.1982).
The considerations listed in C.Cr.P. art. 894.1 provide a method for particularizing sentences of individual defendants. Where the trial judge imposes a sentence without adequate compliance with the mandatory requirement of C.Cr.P. art. 894.1 (that he state the considerations and the factual basis for his sentence), the sentence imposed may be vacated and the case remanded for resentencing in the event that the reasons for an apparently severe sentence in relation to the particular offender and the actual offense committed do not appear in the record. State v. Cox, 369 So.2d 118 (La.1979).
Although a trial judge is not bound by the presentence report, the recommendation should be seriously considered in light of the findings contained within it. State v. Bing, supra.
The defendant received a favorable presentence report recommending probation and restitution. We find that the trial judge failed either (1) to give due weight and consideration to the presentence report or (2) to justify this failure. Also the trial judge failed to adequately comply with the requirements of C.Cr.P. 894.1.
Furthermore, we find disturbing the trial court's statement that it is the history of the Thirty-first Judicial District Court to require service of imprisonment in embezzlement cases. Irrespective of any validity such a policy may once have had, the enactment of the sentencing guidelines contained in C.Cr.P. art. 894.1 did away with such validity. An inflexible policy of imposing a prison sentence violates two principles laid down in the sentencing guidelines. It is manifest under these guidelines that the trial court must give consideration to probationary treatment before requiring actual service of a period of extended imprisonment or justify its failure to impose a probationary sentence.
Secondly, to inflexibly follow a policy with reference to certain types of crimes obviously makes it difficult for the sentencing judge to individualize the sentence. By remanding this case for resentencing we will give the trial judge the opportunity to individualize the sentence, and, if the trial court continues to feel that a probationary sentence is not in order, the trial court may buttress its sentence with such explanation as will justify such treatment.
For the reasons given defendant's conviction is affirmed. However, the sentence is vacated and the case is remanded for resentencing in accordance with the views expressed herein.
CONVICTION AFFIRMED; REMANDED FOR RESENTENCING.