LeBLANC, Judge.
Robin Joseph Brunet was indicted by the Terrebonne Parish Grand Jury for second degree murder, in violation of La.R.S. 14:30.1. He was tried by a jury, which returned a verdict of guilty of the responsive offense of manslaughter. The trial court imposed the maximum sentence of twenty-one years at hard labor. Defendant appealed, alleging seventeen assignments of error. Finding merit in defendant’s first assignment of error, we pretermit a discussion of the remaining issues, reverse defendant’s conviction and remand this matter to district court for further proceedings.
FACTS
Defendant was indicted for the murder of Reed Paul Neil. According to evidence presented at trial, defendant and the victim were close friends and worked together. *595 Shortly before his death, the victim arranged a trade in which defendant acquired a .30 gauge rifle in exchange for a handgun. On the date of the incident, defendant and the victim drove in the victim’s truck to a deserted area to practice target shooting with the rifle. The victim was shot in the back, apparently as he placed a beer bottle in the target area.
Defendant initially denied knowledge of the victim’s death. He later gave a taped statement in which he admitted that he shot the victim but claimed that it was an accident. He explained that he panicked and left the area without checking the victim’s condition because of his life-long fear of corpses.
Defendant’s brother, Daryl Brunet, also gave a statement to law enforcement officers. In this statement, which he repudiated at trial, Daryl claimed that his brother admitted that he shot and killed Neil because the victim “f — ed me over” and that he “shot Reed in the spine and it came out his mouth.” Daryl accompanied his brother to a store to leave the victim’s truck. Defendant did not explain to him why he killed the victim or why he left the truck in the parking lot.
The autopsy report and evidence found at the scene indicated that the victim lived approximately two hours after the shooting. A trail of blood and lacerations on his stomach showed that he had crawled approximately one hundred ninety-three and one-half feet after he was shot. The victim’s body was discovered the next morning by two women on a prayer mission; shortly thereafter, his truck was located in the parking lot. Defendant was arrested for the murder the following day. After his arrest, a rifle was recovered from his house. Ballistics reports confirmed that the victim was shot with defendant’s rifle.
ADMISSION OF DEFENDANT’S STATEMENT
By assignment of error number one, defendant contends the trial court erred by refusing to excise prejudicial language from his statement before it was read to the jury. He claims certain portions of the statements were inadmissible and violated his right of confrontation because they attacked his credibility in a manner to which he could not respond.
Before the trial, defendant unsuccessfully sought to suppress the entire statement, despite its essentially exculpatory nature. The court found the statement was freely and voluntarily made and denied the motion. Thereafter, defendant requested the court to delete portions of the statement, particularly certain comments made by Allen Helm, an assistant district attorney who participated in the questioning. The court deferred ruling at that time. However, before the statement was introduced, the court reviewed the statement; and the state agreed to delete several specific items. Defendant claimed the entire contents of the final two pages should be eliminated because those pages consisted primarily of statements by Mr. Helm, Chief Aubrey Authement, and Detective Jody Ro-bichaux. The court found that neither the statements by the interrogators nor defendant’s responses were prejudicial. The court permitted the final two pages, with substantial deletions, to be presented to the jury because they were necessary to maintain the context of the statement.
Defendant did not take the stand on his own behalf. During the presentation of the state’s case-in-chief, the redacted version of defendant’s statement was read to the jury by Detective Randy Pijor. The statement, as read to the jury, began with an identification of the five parties present and participating: Chief Aubrey Authement, Det. Randy Pijor, Det. Jody Robi-chaux, Assistant District Attorney Allen Helm, and defendant. Det. Robichaux advised defendant of his right to remain silent and obtain the services of an attorney. After obtaining a waiver of these rights, Det. Robichaux began questioning defendant about the death of Reed Neil. Defendant related the sequence of events culminating in the decision to practice target shooting in the deserted area. Defendant stated that he missed the first shot; and, as Neil was putting the target further back, the rifle misfired as he recocked it. *596 Defendant stated that he panicked when he saw that Neil was not moving. He admitted that he took Neil’s truck and drove home to return the rifle. Defendant stated that he left the truck parked near a convenience store and walked several miles to his home.
After defendant related this version of the events, Chief Authement joined Det. Robichaux in questioning defendant about the location of the victim’s truck and wallet. Chief Authement then turned the questioning over to Allen Helm, who asked defendant whether or not he told anyone he shot the victim and asked defendant to tell him what his other activities of that evening had been. When defendant told him that he did not recall what time he went to bed, Helm told him, “It sounds to me like you remember but you’re lying.” Defendant denied the story was untruthful. Helm responded, “Well, that’s the impression I get.”
Of the individuals who participated in the questioning of defendant, only Det. Pijor testified at trial. Defendant contends these statements resulted in a denial of his right of confrontation because Helm was permitted to give his opinion of defendant’s veracity without exposure to cross-examination. He contends, moreover, that permitting the jury to hear Helm’s statements amounted to a prohibited comment as to the truthfulness of a witness.
The state called defendant’s brother, Daryl, to testify at trial. During his testimony, Daryl retracted the statement in which he claimed defendant admitted that he killed the victim. The state, surprised by this testimony, obtained the court’s declaration that Daryl was a hostile witness and attempted to impeach him. Although the state carefully reviewed the contents of the statement, Daryl Brunet steadfastly claimed that he had signed the statement without reading it, was unaware of the details contained therein, and was unable to confirm or deny the facts presented because he did not know the information. Daryl specifically testified that he had misunderstood what his brother told him.
The settled rule in Louisiana is that, when a witness other than the defendant is impeached by the admission of a prior inconsistent statement, the statement is admissible only on the issue of credibility and not as substantive evidence of the defendant’s guilt. State v. Laprime, 437 So.2d 1124 (La.1983). Thus, Daryl Brunet’s statement in which he related that defendant admitted he shot the victim cannot be accepted as evidence of guilt. The only direct evidence that defendant shot the victim is the statement at issue herein.
Before defendant's statement was read to the jury, the state concurred in the deletion of several inflammatory and inherently prejudicial remarks. The trial court ruled the remarks attacking defendant’s credibility were admissible in order to preserve the context of the statement as a whole. However, it is obvious that the redaction of these remarks would not affect the comprehensibility of the statement. Moreover, despite the fact that Allen Helm did not prosecute the case against defendant, the transcript read to the jury specifically identified him as an assistant district attorney and further identified him as the party who accused defendant of lying in his statement. Therefore, although he did not participate in the trial itself, it is unlikely that a jury, upon hearing remarks such as these, could conclude other than that they were offered in an official capacity.[1] Final *597 ly, even if Helm’s statements could be considered as those of an ordinary witness, the type of opinion evidence presented through his remarks would not have been permitted if he had testified at trial. By allowing the state to introduce inadmissible evidence through the reading of a taped statement, the court prevented defendant from confronting all of the witnesses against him. We find, therefore, that the court erred by denying defendant’s request to delete the remarks.
The appropriate standard of review to be applied in determining the effect of the improper admission of evidence is whether or not the court can declare a belief that the error was harmless beyond a reasonable doubt. State v. Banks, 439 So.2d 407 (La.1983). The court must be able to determine, beyond a reasonable doubt, that improperly admitted remarks did not contribute to the verdict.
We find there was a reasonable possibility that the erroneously admitted testimony might have contributed to the jury’s finding of guilt. The state, apparently basing its case upon the anticipated testimony of defendant’s brother, did not introduce other testimony linking defendant and the victim at the time of the crime. Daryl Brunet testified only that he saw defendant and the victim leave defendant’s grandmother’s house together, ostensibly to return to the victim’s house to sleep a few hours before a fishing trip, and that he saw defendant alone one to three hours later driving the victim’s truck (which was not an unusual occurrence). There were no witnesses to the shooting, and no physical evidence was introduced to show that defendant was present at the scene of the shooting. Although the jury could infer that defendant was somehow involved because ballistics evidence established the victim was shot with his rifle, that fact alone does not establish that defendant shot the victim or supply a basis for the jury to infer that the shooting was deliberate. The only direct evidence that defendant actually pulled the trigger is the same statement in which he was accused of lying after claiming the shooting was accidental. Although defendant did not testify, the state was permitted to introduce evidence impeaching defendant’s claim of innocence, no small gain before a jury in a case that turned entirely on a credibility choice. See State v. Vessell, 450 So.2d 938 (La.1984). In a case wherein there is no corroboration on either side, the importance of the defendant’s credibility becomes so significant that prosecutorial error attacking that credibility cannot be harmless beyond a reasonable doubt. See Velarde v. Shulsen, 757 F.2d 1093 (10th Cir.1985). See also Passman v. Blackburn, 797 F.2d 1335 (5th Cir.1986), cert. den. - U.S. -, 107 S.Ct. 1609, 94 L.Ed.2d 794 (1987). Where the very essence of a case is the jury’s evaluation of defendant’s credibility, the admission of tainted evidence cannot be considered harmless. Velarde v. Shulsen, supra; State v. Vessell, supra.
We find, therefore, that the trial court erred by refusing to delete those comments contained in the statement which related to defendant’s credibility and that the court’s actions constituted reversible error. Defendant’s conviction is hereby reversed, and this matter is remanded to the district court for further proceedings. In the event of re-trial, the court is instructed to carefully review defendant’s statement and reconsider the admissibility of comments contained therein in light of this *598 opinion.[2]
REVERSED AND REMANDED.

. Despite the fact that Helm did not conduct the prosecution, defendant claims, nevertheless, that his remarks should be considered in light of the general rule prohibiting the state from directly commenting upon the credibility of the defendant. See State v. Kaufman, 304 So.2d 300 (La.1974), cert. denied, 429 U.S. 981, 97 S.Ct. 495, 50 L.Ed.2d 951 (1976). There is some merit to defendant's contention that the remarks of an assistant district attorney are attributable to the state even if the comments were made by one not actively prosecuting the case. See State v. Donahue, 355 So.2d 247 (La.1978). Helm was identified in the statement as an assistant district attorney and was indisputably acting in an official capacity while participating in the interrogation of the suspect. In State v. Brown, 319 So.2d 409 (La.1975), the Louisiana Supreme Court noted that a district attorney who claimed the defendant lied in his trial testimony flirted with reversible error; however, the court therein found the prosecutor’s comments did not merit reversal because there was no indication *597 that the jury actually heard the remarks, and because the court was able to conclude, in the context of that case, that the jury would logically view the comment as that of a partisan, combative, frustrated state’s advocate, rather than that of a public official alluding to facts known by him outside the record. Herein, defendant did not testify at trial and his statement was not sworn testimony. However, since the state could have voluntarily deleted the remarks but elected to present them to the jury as part of an official interrogation, Helm’s comments are, necessarily, attributable to the state; and, in the present context, the remarks are objectionable whether they are considered those of a prosecutor or a partisan advocate.

. In order to aid in the retrial of this matter, we note that another of defendant's arguments presents a substantial defect in these proceedings. By assignment of error number twelve, defendant submits the trial court erred by refusing to instruct the jury, at the time Daryl Brunet’s statement was introduced, that the statement could be used only for impeachment purposes and could not be considered evidence of defendant’s guilt. The court admitted the statement subject to final instructions. However, as defendant correctly argues, since he made the request at that time, he was entitled to an instruction to the jury as to the limited nature of the evidence at the time the statement was introduced. State v. Kaufman, supra; State v. Ray, 259 La. 105, 249 So.2d 540, 548 (1971).