GUIDRY, Judge.
On January 21, 1988, the defendant, Jeanette Delahoussaye, was convicted of second degree murder, a violation of La. R.S. 14:30.1. On February 1,1988, she was sentenced to serve a term of life imprisonment at hard labor. Defendant appeals on the basis of three assignments of error.
FACTS
Between 2:30 and 4:00 p.m. on April 13, 1987, Donald Delahoussaye, the victim, defendant’s husband, was trying to get into his home. His key had broken the previous week and he needed someone to let him in from the inside. The victim, who routinely got off work early on Monday, knocked on the windows and doors in an attempt to get someone inside to let him in. No one answered and at one time during the incident the victim went to his sister-in-law’s home to see if his wife and family were there. While there, he attempted to reach his home by telephone, but got a busy signal. The victim later used a neighbor’s phone to call his home but again got a busy signal.
Meanwhile, the defendant was allegedly in the master bedroom with their children. She had been sleeping and was awakened by the knocking. At one time, she went to the window but saw nothing. Holly Dela-houssaye, defendant’s daughter, testified that the defendant did not respond to the knocking immediately, but allowed a short time to lapse before investigating.
Eventually the victim decided to force entry into his home. He entered through the carport door and called out asking whether his family was all right. Holly Delahoussaye testified that she recognized her father’s voice and told the defendant it was “Dad”. The defendant told her it was not, and when the victim came to the master bedroom door he was shot, and subsequently died. Defendant contended that she fired the gun which killed her husband because she thought he was a burglar.
At trial the Delahoussayes’ civil attorney, Danny Landry, testified that the Dela-houssayes were in serious financial trouble; had numerous creditors; and, several suits were pending against them. Landry also testified that the victim had numerous insurance policies on his life naming the defendant as beneficiary.
ASSIGNMENT OF ERROR NO. 1
Defendant first argues that the trial court erred in allowing into evidence certain inflammatory and prejudicial evidence of motive. Specifically, the defense contends that the evidence that the Delahous-sayes were deeply in debt and that there were several life insurance policies on the victim’s life naming defendant as beneficiary, was prejudicial and should have been excluded. Defendant made a timely contemporaneous objection to the admissibility of this evidence and properly preserved this issue for appeal. La.C.Cr.P. art. 841. The State contends that this evidence was properly admitted to show the state of defendant’s mind and intent.
Relevant evidence, that which tends to prove or disprove a material issue of fact, is generally admissible. State v. Kahey, 436 So.2d 475 (La.1983); La.R.S. 15:441. The determination of relevancy lies in the sound discretion of the trial judge and his decision will not be disturbed absent a manifest abuse of discretion. State v. Kahey, supra; State v. West, 419 So.2d 868 (La.1982).
The defendant was charged with the crime of second degree murder. The question of defendant’s guilt or innocence turns on whether defendant specifically intended to kill the victim or whether she believed she was protecting her family from an intruder. Evidence that the defendant stood to realize a significant financial gain from the death of her husband is probative of a central issue in this case.
Appellant made her alleged lack of intent a central issue in this case. Second degree murder is a crime which requires proof of specific intent. Since specific intent is an element of the offense, and since defendant’s intent is relevant and central to the question of her guilt or innocence, this evidence was relevant and properly admitted. This assignment of error lacks merit.
*78 ASSIGNMENT OF ERROR NO. 2
During trial, at the playing of the taped emergency (911) call made by defendant, she made an emotional outburst before the jury. During closing argument, the prosecutor attacked the sincerety of this display stating as follows:
“I kind of tried to observe her a little bit. Some of ya’ll I noticed were observing her. Ya’ll decide whether or not that show of emotion was — seemed valid or whether it was not valid. I didn’t see a whole lot of tears. I saw a whole lot of shaking and so forth, but I never saw a lot of tears. But that’s for ya’ll to decide. Some of ya’ll were looking at her I noticed.”
Defendant contends that this comment was improper and she was prejudiced thereby. Defendant did not make a contemporaneous objection but urges that this error did not require contemporaneous objection to preserve it for appeal. Further, defendant argues that this error was so prejudicial as to require a reversal of her conviction. We disagree.
La.C.Cr.P. art. 774 states:
“The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state’s rebuttal shall be confined to answering the argument of the defendant.”
La.C.Cr.P. art. 774 provides no sanctions against one who exceeds the permissible scope of argument. Comment (c) to the article indicates that if argument goes beyond the scope of Article 774, it falls under the ambit of Articles 770 and 771. Upon request of the defendant, the court may, in its discretion, grant a mistrial or an admonition, premised upon argument which is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant in the mind of the jury. La.C.Cr.P. arts. 770 and 771; State v. Prestridge, 399 So.2d 564 (La.1981). The trial judge, however, has wide discretion in controlling the scope of argument. State v. Prestridge, supra.
Except in instances in which a mistrial is mandatory, the issue of the propriety of remarks made during closing argument is not preserved for review when defense counsel makes no objection to the statement either during argument or after argument. State v. Cushenberry, 407 So.2d 700 (La.1981); State v. Whitmore, 353 So.2d 1286 (La.1977); State v. Craddock, 435 So.2d 1110 (La.App. 1st Cir.1983). The defendant failed to object to the allegedly prejudicial remarks and has not properly preserved this issue for review.
Even had the defendant made a timely contemporaneous objection, a reversal of her conviction would not be mandated. It is well settled that a verdict will not be overturned on the basis of improper prosecutorial remarks unless the reviewing court is thoroughly convinced that the jury was influenced by the remarks and that said remarks contributed to the verdict. La.C.Cr.P. art. 775; State v. Douget, 507 So.2d 283 (La.App. 3rd Cir.1987), writ denied 513 So.2d 288 (La.1987); State v. Kyles, 513 So.2d 265 (La.1987).
In State v. Craddock, supra, the prosecutor made several improper comments during closing arguments. Specifically, he stated that the State’s case was uncontro-verted (alluding to the fact that the defendant did not testify), and he made predictions about the societal consequences should the defendant be found not guilty. While the appellate court found these statements improper, it did not reverse defendant’s conviction. The court found defendant withdrew his objection to the first improper remark and thereby waived his right to challenge its propriety. The court concluded that the prosecutorial predictions regarding the ramifications of a not guilty verdict did not influence the jury or contribute to the verdict.
The defendant cites the cases of State v. Neslo, 433 So.2d 73 (La.1983) and State v. Brunet, 521 So.2d 594 (La.App. 1st Cir.1988), in support of her argument for reversal.
*79 Neslo is not factually apposite and does not support defendant’s contention.
In Brunet, a prior statement of the defendant was allowed into the record at trial. During the taking of this statement, one of the questioners made comments challenging defendant’s credibility. These comments were included in the text of defendant’s statement notwithstanding the fact that the questioner never testified. Unlike our case, defense counsel in Brunet tried to exclude this evidence in its entirety through a motion to suppress, and later sought to delete the objectionable portions of this statement. Brunet is clearly distinguishable from the instant case where no objection to the improper commentary was made.
In the case sub judice, the defendant failed to object to the allegedly improper prosecutorial argument and thereby waived her right to now raise this issue. Even had defendant properly preserved this issue for appeal, it would not mandate a reversal of defendant’s conviction because we cannot say that we are thoroughly convinced that the prosecutor’s remarks influenced the jury or that they contributed to defendant’s conviction. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 3
Defendant contends that there was no direct evidence that she intended to kill her husband and, under La.R.S. 15:438, the circumstantial evidence rule, the evidence does not support her conviction. La.R.S. 15:438 states that: “[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence”.
The proper constitutional standard for appellate review of sufficiency of evidence to support a conviction is that enunciated in the United States Supreme Court decision of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This standard is applicable in cases involving both direct and circumstantial evidence. State v. Fruge, 445 So.2d 1293 (La.App. 3rd Cir.1983), writ denied, 447 So.2d 1072 (La.1984), appeal after remand, 470 So.2d 431 (La.App. 3rd Cir.1985); State v. Smith, 441 So.2d 739 (La.1983).
The State presented evidence that the victim, Donald Delahoussaye, regularly got off work around 2:30 p.m. on Mondays. The victim came home at his routine time but was unable to get into his home as the house was locked and he had broken his key. Decedent knocked on the window and doors of his home but no one answered, whereupon he proceeded to his sister-in-law’s home. The victim tried to call his home but got a busy signal. Thereafter, Delahoussaye returned to his house where he repeated his knocking. When he still got no response, he proceeded to the home of his neighbor, Mrs. Marcella Seaux, where he once again tried to telephone his residence. Once again he got a busy signal. By this time it was after 4:00 p.m. The victim decided to pick the lock to his house, entered and called out “are ya’ll ok?”. Defendant’s daughter, Holly, heard this, recognized her father’s voice, and told the defendant that it was “Dad”. The victim proceeded to the bedroom, was shot, staggered from the house out into the front yard, collapsed and subsequently died. Mrs. Seaux, who had remained in her front yard, heard the victim yell “No, Jeanette, no” just before he staggered from the house, mortally wounded.
Although Mrs. Delahoussaye maintains that the shooting was “a mistake” as she thought her husband was an intruder, the evidence introduced and testimony adduced at trial gives little support to her version of what happened. In a voluntary statement given to the authorities, defendant claimed that just before the shooting, the bedroom door was closed and she shot “... [wjhen I saw the .. .when I saw the door know close ...opening and I saw it moving, and it makes a little noise. I just .. .closed my eyes ... ”. The following facts concerning the bedroom door were uncontraverted: (1) the door was out of plumb and in order to engage the latch, one had to lift and apply force to the door; (2) both opening and closing the door made a noticeable sound; and, (3) if one closed the door but didn’t *80 engage the latch, the door would swing open to an angle of approximately 55 degrees. The door was produced in court and showed no damage from shotgun pellets to its interior side.
Holly Delahoussaye testified that when the outside door was opened by her father, the bedroom door was open and she could see light from the opened kitchen door reflected on the hallway wall. She further testified that, although she was “a little bit” scared, neither she nor her younger brother were crying, screaming or exhibiting any other signs of terror. Additionally, Holly stated that when she volunteered to go out to the living room to attempt to determine the source of the knocking, her mother would neither permit her to do so nor do so herself.
Two other facts militate against defendant’s version of the incident: (1) photographs taken by Lafayette Parish Sheriffs deputies established that the victim's pickup truck, which was parked in the driveway, according to the neighbor, Mrs. Seaux, was clearly visible from every window on the north side of the Delahoussaye residence including the window through which the defendant admittedly looked at the time of the initial knocking; and, (2) even though there was a telephone in the bedroom where the defendant and the children went to sleep, at no time during the two hours from the time of the first knocking until the victim was shot did Mrs. Dela-houssaye attempt to use the phone.
Danny Landry, the civil attorney for the defendant and the victim, testified that the family was in dire financial straits. Landry testified that the community estate was insolvent, that there were numerous outstanding bills, and pending suits against the community. Landry testified that the victim had purchased numerous insurance policies on his life, naming defendant as beneficiary. The fact that defendant’s family was financially insolvent, and the defendant stood to gain a financial windfall from the “accidental” death of her husband, provides added support for the jury’s verdict.
After carefully reviewing the record, we find that a rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Smith, supra.
Accordingly, for the reasons stated, the defendant’s conviction and the sentence imposed are affirmed.
AFFIRMED.