367 So.2d 745 (1978)
STATE of Louisiana
v.
Raymond BRADFORD, Duane Badie and Rene A. Bradford.
No. 61972.
Supreme Court of Louisiana.
November 13, 1978.
Rehearing Denied March 5, 1979.
*746 George E. Escher, Student Practitioner, William J. O'Hara, III, Supervising Atty., Loyola Law School Clinic, New Orleans, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
Raymond Bradford, his brother Rene A. Bradford, and Duane Badie were jointly charged, tried for armed robbery, convicted and each was sentenced to serve twenty-five years in the custody of the Director of the Department of Corrections. On this appeal they urge four assignments of error which are considered in the order presented by the defense brief.
The robbery occurred on November 15, 1976 when three men, armed with pistols, two wearing ski masks, entered the business office of St. Augustine High School in New Orleans. The school principal and his assistant were ordered at gunpoint to lie on the floor while the robbers took more than $7,000 from the school safe.
Assignments 17 and 19: Rene Bradford and Duane Badie moved for a severance from Raymond Bradford which was denied. Raymond Bradford's motion for severance against Rene Bradford and Duane Badie was also denied. These rulings are the basis of these assignments of error.
On the morning of trial at the hearing on Rene Bradford's motion for severance, defense counsel urged the court to sever his client from the case, explaining that he would attempt to cast blame on the other defendant in argument to the jury. He did not elaborate further on his defense strategy or commit himself to placing his client on the stand. In effect counsel represented that he would argue that Rene Bradford was not arrested with the codefendants at his mother's house and he had no knowledge of the guns and ski masks seized there. The contention is without merit. By this alibi he would exculpate himself, not cast blame on the codefendants as he infers. At that point Raymond Bradford and Duane Badie joined in the motion to sever, but made no allegations to support their position. The trial judge denied the motions.
As a basic statutory proposition, jointly indicted defendants shall be tried jointly unless: The State elects to try them separately; or the court, on motion of the defendant, and after contradictory hearing *747 with the district attorney, is satisfied that justice requires a severance. La.Code Crim.Pro. art. 704. Because in many respects Article 704 adopts the Standards of the Federal Rules of Criminal Procedure on severance, reference to Federal authorities on the subject is often persuasive.
This article imposes the burden upon the defendant moving for severance to satisfy the judge that justice requires a severance. A mere allegation by a defendant that he will attempt to cast blame on his codefendant does not suffice. The judge must be satisfied by convincing evidence that justice requires a severance. And the granting or refusal of the severance is committed to the sound discretion of the trial judge which will not be overturned, except upon a showing by defendant that actual prejudice resulted from the denial. United States v. Marionneaux, 552 F.2d 621 (5th Cir. 1977); State v. Finley, 341 So.2d 381 (La.1976); State v. Lee, 340 So.2d 1339 (La.1976), cert. denied, 431 U.S. 941, 97 S.Ct. 2658, 53 L.Ed.2d 260.
This Court's latest expression on the subject is to be found in State v. McGraw, 366 So.2d 1278 (La.1978):
"[R]eversal of a conviction for failure to sever where antagonism is shown is not always mandated unless prejudice can be shown. C.Cr.P. 921. As the comments to C.Cr.P. 704 indicate, the `antagonistic defenses' test was not codified as a standard to be used by the court in granting a severance when, in his opinion, after a contradictory hearing, `justice requires it.' According to the comments, the idea from the federal rules, that a severance may be granted when a joint trial may result in `prejudice', has been incorporated into the standard of `justice' in art. 704. Comment (d) to C.Cr.P. 704."
On the vague allegations of defense counsel that he would cast blame on his clients codefendants in his argument to the jury, the trial judge properly denied the motion to sever. See Fed.Rules Crim.Pro., rules 8, 14, 18; United States v. Perez, 489 F.2d 51, reh. denied, 488 F.2d 552, cert. denied, 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664.
Where a crime involves more than one actor, the need arises to balance the interest of the State in trial economy against the rights of defendants to separate trials. Joinder expedites the administration of justice, reduces the congestion of the trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve on juries, and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once. United States v. Leonard, 161 U.S.App.D.C. 36, 494 F.2d 955 (1974).
Another policy consideration implicit in the mandate of Article 704that jointly indicted defendants shall be jointly triedis the need to present the whole case at one time where, as here, several defendants are involved in the same transaction. The State's policy is supported by the general principle that the State decides when, how, and whom to prosecute and should therefore be permitted to join offenders under appropriate circumstances. United States v. Perez, supra.
At the close of the State's case, while the trial was in progress, Raymond Bradford was called to the witness stand by his attorney and his codefendants moved for a severance in anticipation that his testimony would be prejudicial to their defense. Their argument was that Raymond's testimony would place them in the position of defending against a codefendant and the State. Speculating that if Raymond took the stand Rene and Duane would feel compelled to take the stand in rebuttal, their attorneys joined in the motion for severance. The motion was again denied.
Raymond did take the stand to support his defense of alibi. He denied any participation in the robbery. He stated that the ski masks found in the house belonged to his older brother, Robert. The guns in the house, he said, were found by him in bushes in the project courtyard. Later he displayed them to his brother, intending to sell them. At the time of the robbery he testified *748 that he was at home sleeping. In the afternoon of that day he stirred himself to help his sister paint the apartment. He was not sure where Rene was that day, but believed he was in school. On cross-examination he linked Duane Badie to ownership of a green Chevrolet, similar to the getaway car used in the robbery.
Rene Bradford then took the stand against the express advice of his attorney. He admitted that he had seen both the ski masks and one of the pistols before. He denied participation in the robbery but was unable to account for his whereabouts at the time. His testimony was otherwise immaterial.
When it became apparent that counsel for Rene and Duane would call Sherman Predier to the witness stand as an eyewitness to the robbery, to identify Raymond as the unmasked confederate, Raymond's attorney once again moved for a severance. As asserted by counsel at the time, having completed the presentation of Raymond's defense, "this puts me in the position after I have already rested of being unable to defend against a new identification." Actually, counsel for Raymond did cross-examine Predier to some extent, voluntarily limiting cross-examination to the time Predier viewed Raymond at the robbery. Moreover, Raymond's attorney did not request an opportunity to introduce additional evidence, which the trial judge in his discretion is authorized to permit, La.Code Crim.Pro. art. 765(5). Raymond did not therefore take the stand in rebuttal to deny that he was present at St. Augustine High School during the robbery, despite the fact that he had waived his right to self-incrimination by his earlier testimony.
Predier testified he was a student at St. Augustine. He was in the principal's office at the school on November 15, 1976 when the three armed robbers entered. The unmasked participant was Raymond Bradford.
The evidence relied upon by defendants establishes no sharp antagonism in their defenses. Except for inferences which may be gained from their testimony, each was primarily concerned with exculpating himself, not blaming the other.
Aside from the failure of the defense to discharge the burden of satisfying the judge that justice required a severance, this record fails to show that the claimed antagonistic defenses prejudiced defendants. All the evidence available from this record overwhelmingly supports the jury verdict of guilty.
Assignment 5: Officer Reed participated in the investigation of the robbery and the arrest of defendants. At the time of the arrest in the Bradford house, he testified the three defendants were present. On cross-examination defense counsel elicited from Officer Reed the fact that Duane Badie did not live at the Bradford house, but lived instead with his father on Gibson Street in New Orleans.
Defense counsel then asked, "Is it not correct that at the time you went to that other address on whatever street that was, that Mr. Badie was not wanted for anything, was he?"
Reed replied, "No, sir, but he was under investigation for the robbery at St. Augustine."
No objection was made at this time. Cross-examination continued. Reed testified defendants were told to get their jackets and accompany the arresting officers to police headquarters. When Duane Badie reached for his coat on the bed, shotgun shells fell to the floor; concerned for their safety the officers grabbed defendants.
Defense counsel then proceeded to cross-examine Reed in an effort to show that Badie was only under investigation at the time and he was not arrested when Reed grabbed him. This colloquy followed:
"Q. [Defense counsel] They reached to get their jackets, because you said, `Put on your jackets; I'm taking you downtown.'
A. [Officer Reed] That's right.
Q. You told that to Duane, and he's not even under arrest at that point. Right?
A. He was under investigation for armed robbery.

*749 Q. And what crime did you cite? Where is that in the Criminal Code?
A. It's nowhere in the Criminal Code, but it's also, if there's enough probable cause generated that you think that someone can be under investigation and there's enough probable cause, you can investigate them.
Q. I wish you would . . . It's not a crime, Right? And yet it's alright for you to take someone because you feel he is a possible suspect. You can take him, take him out of his house, and tell him to get in a car with an uninformed officer to go to an unknown location. Is that what you're saying?
A. He was shown my identification, sir?
Q. You wouldn't call that an illegal arrest, would you?
A. No, I wouldn't.
Q. You wouldn't say that he was under arrest then?
A. He was under arrest after checking this gun here that was on the bed that they were reaching for which come up stolen."
An objection was made that the officer's answer to the last question was unsolicited, and defense counsel moved for a mistrial. He argued that reference to the fact that the gun had been stolen was an impermissible remark about another crime as to which evidence was not admissible. La.Code Crim.Pro. art. 770.
In addition to the quoted testimony, defense counsel repeatedly questioned Officer Reed concerning the legal basis for his action in arresting Duane Badie. The purpose of the cross-examination was to show that no probable cause existed for the arrest. Prior to the objection, testimony had been elicited from Officer Reed, without objection, that Duane was under investigation for the robbery at St. Augustine High School. The interrogation challenged Officer Reed to justify his actions, and reference to the fact that the gun had been stolen, in the mind of the witness, was a direct reply to that challenge.
There is no basis for the defense claim that Officer Reed's testimony reflected a deliberate attempt to introduce inadmissible, prejudicial remarks concerning another crime. To the contrary, the cross-examination was directed to the justification for the arrest and Officer Reed, who was untrained in the finer distinctions of the law on the subject, sought to justify his actions by his response. State v. Smith, 310 So.2d 580 (La.1975).
A witness is entitled to explain the basis for his testimony and in doing so an officer may properly rebut the attack upon his actions. Testimony was elicited to the effect that handguns had been procured by the accused for use in the robbery. Therefore evidence that one of these pistols was stolen was relevant to this prosecution. It was evidence bearing directly upon the crime charged.
This assignment is without merit.
Assignments 7 and 8: Harold Bradford, the younger brother of defendants Raymond and Rene was called as a witness by the State. His answers to questions were evasive and contradictory. Finally he admitted that he had gone to police headquarters and talked to someone there. When he was asked if he gave a statement there, he said he did not understand. Asked if he signed papers at that time, he replied that he signed papers but "didn't know what it was."
At this stage of the interrogation defense counsel objected to the introduction of the statement or even showing it to the witness. The objection was overruled.
In further questioning, Harold said he had seen the statement at police headquarters. When he was asked if he recognized the two signatures on the statement, defense counsel moved for a mistrial because no foundation had been laid and the prosecutor was attempting to impeach the State's own witness. Again the objection was overruled.
Thereafter Harold identified the signatures as his own and that of his stepmother. *750 After reading the document Harold denied that he told the police anything about an armed robbery. Pointing to defendants, the prosecutor asked Harold if he told the police anything about them. Over defense objection, he said yes; however, he then denied that he told the police anything about defendants or a robbery or guns. Thereafter Harold answered most questions "I don't remember," or "I don't know," whereupon, the prosecutor asked the court to declare Harold to be a hostile witness and the defense objected. The trial judge ruled that the witness was hostile. With this ruling the prosecutor questioned Harold concerning the contents of the statement he made to the police on January 4, 1977 about the high school robbery inculpating defendants. Again he categorically denied that he made the statement.
In its brief the defense argues that a mistrial should have been ordered because the court permitted the prosecutor to show the statement to Harold before he was declared to be a hostile witness. Also, according to the defense, no foundation was laid for showing the statement to the witness.
In our opinion this witness displayed marked hostility and it was therefore proper for the State to impeach him with his prior contradictory statement. La.Rev.Stat. 15:487.
For the reasons assigned, the conviction and sentence are affirmed.
DENNIS, J., concurs and assigns reasons.
TATE, J., dissents and assigns reasons.
DIXON and CALOGERO, JJ., dissent.
DENNIS, Justice, concurring.
Under the post trial standard of review for prejudice by a denial of a pre-trial or mid-trial severance motion, i. e., it must be shown that the defendant probably would not have been convicted had he been allowed a separate trial, State v. McGraw, 366 So.2d 1278, 1285 (La.1978), I do not find that any defendant has shown sufficient prejudice to warrant reversal.
In fairness, however, defendants should be allowed to supplement the truncated record designed for our review, if they wish, in support of any motion for rehearing on the severance issue.
TATE, Justice, dissenting.
I respectfully dissent from the failure to sever Raymond Bradford from the trial of his co-defendants.
As I stated in my dissent in the McGraw case, even though there may be substantial evidence in the record supporting the conviction all defendants, guilty and innocent, are entitled to a fair trial. One of the fair-trial rights of the defendant Raymond Bradford is to have his own trial severed from that of a co-defendant with an antagonistic defense to his, by which in effect he must defend not only against the state but also against his co-defendant. La.C.Cr.P. art. 703 (see official revision comment (c); State v. Thibodeaux, 315 So.2d 769 (La.1975).
A substantial violation of this statutory (if not constitutional) right entitles him to a reversal and to a new trial conducted in accordance with law, La.C.Cr.P. art. 921, for the law presumes prejudice when an accused is denied a right designed to protect fair-trial rights of all accuseds.
The circumstances of this trial indicate the prejudice sustained by the accused.
After Rene Bradford took the stand and denied any complicity in the crime, his defense counsel, in an apparent attempt to show that Raymond and not Rene was the perpetrator of the crime, called Sherman Predier to the stand who positively identified Raymond as one of the robbers.
It is immaterial that Raymond cross-examined Predier, and that he failed to request the opportunity to introduce additional evidence. The purpose of the antagonistic defense rule, as stated above, is to prevent situations in which a defendant must defend not only against the state, but also against his co-defendant. In this case, Raymond Bradford stood accused in the eyes of the jury not only by the state, but also by his co-defendants.
*751 In my opinion, the defense of co-defendant Rene Bradford, antagonistic to the defense of Raymond Bradford, mandates separate trials.
Even under the McGraw test that the defendant show prejudice, I am unable to see how the majority can affirm the conviction, since the truncated record contains only excerpts of the full testimony. Whether error is harmless or prejudicial can only be determined in an instance such as this by examination and in the context of the entire evidence taken as to innocence or guilt.
The record does not indicate that the convictions of defendants Rene Bradford and Duane Badie should be reversed on the basis of the denial of repeated motions to sever under the Thibodeaux antagonistic defense test. Raymond Bradford sought to exculpate himself by an alibi defense. He did not, in fact, cast blame on the others for the offense.
Certain details in his testimony did tend to implicate the other defendants. Those details established that the co-defendants knew about the guns later recovered in the house, and that Badie drove a car similar in make and color to the get-away vehicle. But they do not emerge as part of a larger effort on Raymond's defense to exclude the possibility of his guilt by directly suggesting the participation of the others. The taint of antagonism therefore may be too attenuated for purposes of State v. Thibodeaux.
I also dissent as to the conviction of all three defendants on the basis that the trial court improperly permitted the state to impeach its own witness through the use of a prior inconsistent statement.
The prosecutor called Harold Bradford, a juvenile and the younger brother of the defendants Rene and Raymond Bradford, to the stand for the precise purpose of destroying his credibility for the juryto the end that the confession would be introduced for the truth of its contents. This use of the statement by Harold Bradford goes beyond the limits of impeaching one's own witness provided by La.R.S. 15:487.
As noted by my concurring opinion in State v. Rossi, 273 So.2d 265, 271 (La.1973):
"Since the sole purpose of admitting prior inconsistent statements is to test the credibility of the witness, it is fundamentally illogical to permit a party to call a hostile witness to testify to a statement, for the sole purpose of impeaching the credibility of that expectedly hostile witness by showing some prior inconsistent statement. The apparent reason for calling the witness or questioning him on the subject of the prior statement must be to get before the jury such prior inconsistent statement, with its obviously prejudicial effect on the issue of the substantive guilt or innocence.
"A party should not be able to call a witness to evoke a statement which the party intends to dispute by the prior statement, for the sole purpose of getting before a jury inadmissible hearsay testimony (ostensibly offered only to prove that the witness is lying as indeed the party who called him knew in advance he would). See Pugh, 22 La.L.Rev. 397-398 (1962)."
For the reasons assigned, I respectfully dissent.

ON APPLICATION FOR REHEARING
PER CURIAM.
After reviewing the supplemented record in this case, and finding that a rehearing is not warranted, the applications for rehearing by the defendants are denied.
TATE, J., is of the opinion that a rehearing should be granted.
BLANCHE, J., not participating.