499 So.2d 376 (1986)
STATE of Louisiana
v.
Lionel SORINA.
No. KA-5414.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 1986.
*377 Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Pamela S. Moran, Asst. Dist. Atty., Chris Toensing, Law Clerk, New Orleans, for appellee.
Before SCHOTT, KLEES and BYRNES, JJ.
*378 BYRNES, Judge.
The defendant, Lionel Sorina, was indicted on two counts of first degree murder in August, 1981 and went to trial in October, 1983. When this trial ended in a mistrial, the district attorney amended the indictment to charge two counts of second degree murder and retried the defendant in July, 1984. He was convicted on both counts and given two consecutive sentences of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. On appeal Sorina asks that we reverse his convictions based on six assignments of error. We find no merit to these assignments and affirm.

FACTS
Shortly after midnight on March 13, 1981, Michael Gebhard and Daniel Hemple struck up a conversation with Ferdinand Mathieu, who was busy shucking oysters at an oyster bar in the French Quarter. During the course of this conversation Gebhard and Hemple asked Mathieu if he knew of any black women who would be willing to engage in sex with the two young white men. Mathieu responded affirmatively and suggested that they leave together when Mathieu got off work around 2:30 a.m. After leaving the oyster bar the threesome drove in Gebhard's car to New Orleans East where Gebhard lived with his sister and brother-in-law. After a brief stopover the three set out for the St. Bernard Housing Project where Mathieu hoped their mission could be accomplished.
Upon reaching the vicinity of the project, Mathieu directed Gebhard to stop outside a local pool hall. Mathieu then went inside where he met the defendant, Lionel Sorina, who told Mathieu that women were available through him. Sorina then produced one woman and promised to find another. The three climbed into Gebhard's car and went to a location within the project to seek out a second female companion. Upon arrival at their destination, Sorina's female friend left to find another woman. After fifteen minutes elapsed, Mathieu stepped out of the car to find the cause of the delay. When he returned a few moments later, Mathieu witnessed Sorina shooting both Gebhard and Hemple in their heads as the pair sat in the front seat of the car.
At the defendant's re-trial, Mathieu gave testimony relating the above incident. In addition, a statement made by Mathieu's brother, Brian, was introduced which corroborated portions of his testimony. The state also produced testimony from two detectives who secured incriminating statements made by Sorina while interviewing him prior to his arrest.

ASSIGNMENT OF ERROR 1
By his first assignment of error, the defendant asserts that the trial court erred when it denied his motion for mistrial entered after a police officer made an indirect reference in his testimony to the defendant's prior arrest. At trial, the prosecutor questioned the police officer regarding his investigations into the defendant's involvement with the slayings. The following exchange occurred after the prosecutor asked whether the officer had shown photos of the victims to the defendant.
Q. Was he under arrest at that time?
A. Yes, ma'm
Q. Was he under arrest for this charge at that time?
A. No, ma'm
This response was met by defendant's request for mistrial. The judge denied the motion and admonished the jury to disregard the last comment by the officer.
In brief, the defendant argues that C.Cr.P. Art. 770(2) mandates a mistrial in this situation. We disagree.
C.Cr.P. Art. 770(2) provides:
Upon a motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
Initially it must be pointed out that testimony by a police officer does not generally *379 fall within the purview of Art. 770(2) since a police officer is not a member of the three occupational categories covered by the article. However, the jurisprudence has extended the coverage of Art. 770(2) to include police officers when their remarks or comments concerning other crimes flow from a pattern of unresponsive answers or improper intent by the police officer or prosecutor. State v. Green, 409 So.2d 563 (La.1982).
In the instant case, the officer's response cannot be characterized as unresponsive. Nor does it appear that the officer's straightforward answer to the prosecutor's direct question displays "improper intent". Moreover, the tenor of the exchange as well as the context in which the questioning took place leaves little doubt that the prosecution lacked the malintent required to find the police officer's response controlled by Art. 770(2). It appears that the prosecutor's question was not asked with the intent to elicit prohibited testimony of prior crimes but to clarify the officer's previous response which the prosecutor had evidently not anticipated.
Furthermore, beyond this single mention of a prior arrest by the police officer, there was no other reference to "another crime" either as to time, place or nature. In light of the entire record we cannot say that the brief allusion to a prior arrest would so prejudice the jury that it would unjustifiably convict the accused of two counts of second degree murder. See State v. Vernon, 385 So.2d 200 (La.1980). Under these circumstances we find that the trial court's admonition to the jury was sufficient to remedy any prejudice the defendant may have suffered and to protect his statutory rights.

ASSIGNMENT OF ERROR 2
By this assignment of error, the defendant alleges that the trial court erred in denying a mistrial when the State impeached its own witness, Brian Mathieu, by use of a prior statement given to the police despite no showing of surprise by the State.
Under R.S. 15:487,
"[n]o one can impeach his own witness, unless he has been taken by surprise by the testimony of such witness, or unless the witness shows hostility toward him, and even then, the impeachment must be limited to evidence of prior contradictory statements." (Emphasis added)
This provision clearly provides that either surprise or hostility shown toward the party calling the witness is sufficient to permit the introduction of prior inconsistent statements for the purpose of impeachment. In the instant case, the State's witness, Brian Mathieu, repeatedly denied having made the statements to police which linked Sorina to the crime. The fact that Mathieu had similarly denied giving the statement to police at an earlier proceeding may weaken the state's argument that it was taken by surprise by the witness's testimony but it in no way detracts from the hostility displayed by Brian towards the prosecutor.
As this witness was clearly hostile, it was not improper to allow him to be impeached by his prior contradictory statements. See State v. Edwards, 419 So.2d 881 (La.1982); State v. Bradford, 367 So.2d 745 (La.1978). This assignment of error is without merit.

ASSIGNMENT OF ERROR 3
The defendant contends that the trial court erred in allowing the State to convert the trial into a test of whether Brian Mathieu's prior inconsistent statements were freely given. The record does not support this assertion. It seems that Mathieu's prior statement served only a corroborative function in what appears to have been a compelling case against the defendant. Earlier in the retrial, Mathieu's brother, Ferdinand, testified to essentially the same incriminating facts that were repeated in Mathieu's statement. Moreover, the state produced testimony from over twenty witnesses, many of whom did not mention Mathieu's statement. In sum, it was the cumulative effect of overwhelming evidence which led to the defendant's conviction, *380 not simply the introduction of Brian's damaging contradictory statement.

ASSIGNMENT OF ERROR 4
By this assignment of error the defendant alleges that the trial court erred in not declaring a mistrial when the State amended the indictment from first to second degree murder after the commencement of trial. Specifically, Sorina objects to the following discussion which occurred while the minute clerk was reading the indictment.
BY THE COURT: Just a minute, I believe you have amended the Bill of Information [sic].
BY A.D.A.: Yes, your Honor, I have.
BY THE COURT: Would you
BY A.D.A.: I have amended it from first degree murder to second degree murder.
BY THE COURT: Would you amend it fully so he can properly read it to the jury?
BY A.D.A.: We take out with the intent to kill or inflict great bodily harm upon more than one person, that is first.
The defendant asserts that the above colloquy mandates a mistrial on two bases: the amendment of the indictment occurred after the commencement of the trial in contravention of C.Cr.P. Art. 487; and, the remarks by the A.D.A. constituted an impermissible reference to another crime as proscribed by C.Cr.P. Art. 770(2).
Upon examination of the record it is evident that neither of these statutes was violated. The amendment to the indictment was made in July, 1984two months prior to trial. Due to an apparent clerical error, language pertaining to the first degree murder charges remained on the amended indictment prompting the discussion noted above. We do not interpret C.Cr.P. Arts. 487 and 770(2) to require a mistrial under circumstances such as these.
We find this assignment of error without merit.

ASSIGNMENT OF ERROR 5
By his fifth assignment of error, the defendant alleges that reversible error was committed when the State failed to properly notify him of its intention to introduce an inculpatory statement made by him. Under C.Cr.P. Art. 768 the State must notify the defendant of its intent to introduce an inculpatory statement in evidence unless the defendant has been granted pretrial discovery. In the present case, Sorina had the advantage of pretrial discovery which, in fact, revealed that the State had in its possession an inculpatory statement made by him. Under these circumstances, Article 768 does not apply, and the state was not required to give notice of its intent to use this statement.
This assignment of error is without merit.

ASSIGNMENT OF ERROR 6
By this assignment of error, the defendant asserts that it was error to permit his alleged co-defendant to testify perjuriously. The determination of whether a witness' testimony is truthful is the province of the trier of fact. State v. White, 458 So.2d 535 (La.App. 4th Cir.1984), writ denied, 476 So.2d 341 (La.1985). Absent an abuse of the fact finder's discretion a finding of credibility will not be disturbed by the appellate court.
This assignment of error is without merit.

ERRORS PATENT
Finally, we have reviewed the record of Sorina's conviction for errors patent and find no errors.
For the above reasons, the convictions and sentences of the defendant, Lionel Sorina, are affirmed.
AFFIRMED.