# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-481

**STATE OF LOUISIANA**

**VERSUS**

**CARLOS ANTHONY TOBY**

\*\*\*\*\*\*\*\*\*\*

REMAND FROM THE LOUISIANA SUPREME COURT
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 169223
HONORABLE ROYALE L. COLBERT, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**CLAYTON DAVIS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Charles G. Fitzgerald, Gary J. Ortego, and Clayton Davis, Judges.

**AFFIRMED.**

**Janet D. Madison**
**Todd S. Clemons**
**Todd Clemons & Associates**
**1740 Ryan Street**
**Lake Charles, LA 70601**
**(337) 477-0000**
**todd@toddclemons.com**
**COUNSEL FOR DEFENDANT/APPELLANT:**
 **Carlos Anthony Toby**

**Ronald D. Landry**
**District Attorney**
**Kenneth P. Hebert**
**Assistant District Attorney**
**Fifteenth Judicial District Court**
**Post Office Box 3306**
**Lafayette, LA 70501**
**(337) 232-5170**
**kphebert@15thjdcda.org**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
 **State of Louisiana**

**DAVIS, Judge.**

Defendant, Carlos Toby,[1] was charged with one count of second degree murder, a violation of La.R.S. 14:30.1, and one count of conspiracy to commit second degree murder, a violation of La.R.S. 14:26 and La.R.S. 14:30.1. A jury unanimously found Carlos not guilty of second degree murder but guilty of conspiracy to commit second degree murder. The trial court sentenced Carlos to imprisonment for twenty-five years at hard labor with benefit of parole and ordered him to pay restitution of $16,987 to the victim's family to cover hospital expenses.

Carlos appealed his conviction and sentence and alleged five assignments of error by the trial court. This court found merit in the first assignment and held the evidence was insufficient to support the conviction. *State v. Toby*, 22-481 (La.App. 3 Cir. 4/19/23), 363 So.3d 1260. Accordingly, this court did not address the remaining four assignments of error.

The State sought review of this court's decision. The Louisiana Supreme Court reversed, reinstated Carlos's conviction, and remanded the case to this court for consideration of the four remaining assignments of error. *State v. Toby*, 23-722 (La. 10/25/24), 395 So.3d 831 (per curiam). The supreme court denied Carlos's motion for rehearing. *State v. Toby*, 23-722 (La. 12/12/24), 397 So.3d 424. We now consider the four assignments of error pretermitted by our earlier opinion.

## FACTS

The supreme court's opinion set out these facts:

> Brandon Broussard was shot and killed in his girlfriend's driveway in Lafayette on October 13, 2018, shortly before midnight. Defendant had also dated the girlfriend. Defendant and Broussard fought in a Lafayette nightclub two weeks before the shooting. The State's theory was that defendant enlisted his brother, Shavis Toby, in the revenge killing.

---

[1]Because the defendant, Carlos Toby, and his brother, Shavis Toby, were co-defendants tried jointly, we refer to them by their first names here to avoid confusion.

Although neither defendant nor Shavis lived in Lafayette, cell phone data and surveillance footage showed that they both traveled to Lafayette on the day of the murder (with defendant driving from Texas and Shavis driving from New Iberia). Phone tracking data and surveillance video placed defendant's phone and a dark colored vehicle like the one defendant drove in the immediate vicinity of the shooting (albeit not at the time of the shooting). Phone records also showed repeated calls and text messages between defendant and his brother between 4[:00] and 7:18 pm on the day of the murder. While phone records indicated that defendant's phone was somewhere between Lafayette and Willow Street[s] at the time of the shooting, phone records and surveillance video placed Shavis's phone and a vehicle like the one he drove near or at the crime scene around the time of the shooting.

Physical evidence linked Shavis to the crime scene[,] and his car was captured nearby on surveillance video. A DNA profile collected from a fragment of a blue latex glove found in the grass at the crime scene matched Shavis's DNA. A box of the same style gloves was found at Shavis's home.

*Toby*, 395 So.3d at 832–33.

## ERRORS PATENT

When the trial court pronounced Carlos's sentence, it informed him that he had two years from that date to seek post-conviction relief. It then waived that two-year period and extended it to four years. We find two errors patent in the trial court's advice.

First, a defendant has two years after the conviction and sentence become final, not after the date of sentencing, to seek post-conviction relief. La.Code Crim.P. art. 930.8. Next, the trial court had no authority to extend the time limitation from two to four years. *State v. Daigle*, 593 So.2d 676 (La.App. 3 Cir. 1991), *writ denied*, 604 So.2d 980 (La.1992).

We advise Carlos by way of this decision that, pursuant to La.Code Crim.P. art. 930.8, any application for post-conviction relief he may seek, including an application seeking an out-of-time appeal, shall not be considered if it is filed more

2

than two years from the date the conviction and sentence become final pursuant to La.Code Crim.P. arts. 914 or 922.

## DISCUSSION

Carlos's pretermitted assignments of error allege the trial court's failure to grant a mistrial, disallow unqualified expert testimony, grant multiple requests to sever his trial, and impose a constitutionally acceptable sentence.

*Failure to grant motion for mistrial*

Verbal polling of the jury after Carlos's guilty verdict reported a unanimous verdict of not guilty of second degree murder and guilty of conspiracy to commit second degree murder. However, written polling slips showed two jurors did not agree with the guilty verdict on the conspiracy charge. Thus, the verdict was not unanimous unless, according to the trial judge, "y'all marked y'all's polls wrong." The trial judge instructed the jury to "go back in there and deliberate again, and reach a verdict, as to Count 2, regarding both defendants. So, y'all got to go back and re-vote."

Carlos's counsel moved for a mistrial based on the trial court's instruction "to go back and re-vote." He contended the trial court's instruction implied the jury should simply vote again to make the verdict unanimous, while the proper instruction should have been to go back for further deliberation until a unanimous verdict could be reached. The trial court denied the motion for mistrial.

The trial court brought the jury back to the courtroom and said, "I think I misspoke when I told you guys to go back in and re-vote . . . . [M]y instruction should have been that you are to go back and deliberate with the goal of reaching a unanimous verdict."

One of the jurors explained, "The problem with the papers they passed around, was some of the jurors misunderstood what the[y] were supposed to check

3

off. They didn't realize they were agreeing with the verdict that was read." When the trial court asked if the jury had a verdict, one of the jurors responded, "Yes, it's the same verdict." Another noted, "Yes, it's the same one. Unanimous." Still another said, "Nothing has changed." The clerk announced the same verdict; verbal polling and the re-issued written polling slips indicated the verdict was unanimous.

Louisiana Code of Criminal Procedure Article 812 (B)(2) allows the trial court to "remand the jury for further deliberation" or declare a mistrial when polling of the jurors indicates an insufficient number for conviction. The record shows the jury's confusion resulted from a simple misunderstanding about reporting its verdict and not from any disagreement among the jury regarding Carlos's guilt. This assignment of error lacks merit.

*Expert testimony*

Carlos argues the trial court erred by allowing Captain Sonny Stutes of the Lafayette Parish Sheriff's Office to testify as an expert, particularly regarding the CellHawk tracking program. Carlos questions Captain Stutes's expertise and the program itself. We review this assignment of error under the abuse of discretion standard. *State v. Lee*, 14-2374 (La. 9/18/15), 181 So.3d 631, *cert. denied*, 555 U.S. 824, 129 S.Ct. 143 (2008).

Carlos's counsel first argued the State was "fuzzy" about whether it sought to qualify Captain Stutes as an expert in the field of "cellular mapping and analysis" or "cellular mapping and records analysis." However, counsel did not explain how those terms differed or how any distinction or difference would prejudice his client. Counsel next noted Captain Stutes had not previously qualified as an expert in either field. He argued that allowing Captain Stutes's expert testimony would make Carlos a "guinea pig" on which to experiment. Finally,

4

Carlos's counsel contended the CellHawk program was easy to understand, and expert testimony was unnecessary.

Expert witness testimony is based on "[t]he expert's scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue[.]" La.Code Evid. art. 702. Expert testimony must be "based on sufficient facts or data[,]" use "reliable principles and methods" in its analysis, and reliably apply those "principles and methods to the facts of the case." *Id.*

One factor the courts consider regarding the admission of expert testimony is whether the witness "has previously been qualified as an expert." *State v. Craig*, 95-2499, p. 9 (La. 5/20/97), 699 So. 2d 865, 870. Every expert witness must at some point in his career testify for the first time. Here, Captain Stutes described his background in law enforcement, education, and training throughout various disciplines including cell phone mapping, analysis of the information gleaned from mapping, and extracting information from cell phones. His formal training involving cell phone records and application began in 2007 when he attended a week-long class about the use of cell phones in criminal investigations. He learned to understand and break down the records of cell phone companies and map that information to aid investigations.

Captain Stutes explained how the CellHawk application maps cellular records and reads records from various cell phone companies. The program "plots the latitude and longitude[,] . . . reads the direction it's facing[,] and when it's used, . . . draws it out for you, and gives you like a little snapshot of where it's used." Captain Stutes attended two online classes put on by CellHawk in 2019 and 2020, and he used cellular record mapping "hundreds of times" in his work and "at least four times in this case alone."

Carlos's counsel traversed Captain Stutes about the online CellHawk classes he attended for a total of four hours on courtroom presentation and operation of the program. Additionally, Captain Stutes attended two one-week courses on cell phone mapping and analysis. The trial court qualified Captain Stutes as an expert in the offered fields, noting that counsel did not question Captain Stutes's knowledge, skill, or experience other than pointing out he had never before testified as an expert witness.

Captain Stutes explained that CellHawk shows how cell phone towers can track a device's movements either all at once or sequentially, "like in a timeline[,]" connecting time with location relative to that device. CellHawk maps data from cell phone records; it does not produce its own records. It uses the "Snag It" program to record a video of "a moving map that shows the plottings of the cell phone towers[,]" giving a timeline of activations that "move along in the map[.]" The video Captain Stutes created using CellHawk information and Snag It is "a capture of the Cell Hawk [sic] programming action."

Captain Stutes explained that CellHawk was designed to be "a very simple program." Carlos's counsel argued that, as a "simple program," expert testimony was unnecessary. However, the record shows the training and skill Captain Stutes needed to understand, utilize, and interpret the program. While CellHawk may be "a very simple program" for someone with his background and experience, it is not necessarily so simple for a juror without that background and experience. The program still needed to be explained to the jury so that it could "understand the evidence." Indeed, Carlos's counsel noted at trial, as Captain Stutes verified, that CellHawk is "not readily understandable for the average person[.]"

In addition to testifying about his use of CellHawk, Captain Stutes also described the technology about how cellular towers work and record information.

Cell phone mapping represents where a tower is located and is used to document historical information, "stuff that's already happened." Captain Stutes explained how CellHawk used information from phone records to plot and map the location of the phone activating the towers.

Carlos's argument focuses on alleged shortcomings of CellHawk rather than on Captain Stutes's expert testimony. That testimony did not rely solely on CellHawk information; it also included phone service company records. Captain Stutes interpreted the information shown by the records as well as what CellHawk plotted and mapped. His background, knowledge, and training was necessary to explain the entire system to the jury, which could not have interpreted the information without his assistance. This assignment of error lacks merit.

*Failure to sever trial of defendants*

Carlos contends the trial court's denial of his multiple motions to sever his trial from Shavis's resulted in unfair and actual prejudice. We review this assignment of error under the abuse of discretion standard. *State v. Bradford*, 367 So.2d 745 (La.1978). This court may not overrule the trial court's discretion "except upon a showing by defendant that actual prejudice resulted from the denial." *Id.* at 747.

Carlos filed two motions to sever his trial from Shavis's, and he also raised the issue prior to trial and in his motion for new trial. The two motions were identical; Carlos filed the first on December 6, 2019, and the second on March 16, 2021. The motions contended the introduction of Shavis's initial interview with law enforcement would unfairly prejudice Carlos. The interview was not offered at trial, and that potential prejudice did not arise.

Carlos next raised the issue of severing his trial, according to his appellant brief, at a status conference on November 9, 2020. The record does not include

7

anything pertaining to that conference other than a minute entry indicating Carlos "reurged the Motion to Severe [sic] [,]" and the trial court denied it. At a hearing on April 21, 2021, Carlos again presented the interview as proper ground for severance.

Shavis's counsel also argued for separate trials at the April 2021 hearing. He contended the brothers were "going to go to war with each other." He also objected to cell phone records from Sprint because evidence from those records was stronger against Shavis than it was against Carlos. Shavis included that argument in his own motion to sever the trials.

On appeal, Carlos repeatedly contends that he was unduly prejudiced by his joint, unfair, and prejudicial trial with Shavis. He complains that he and Shavis were seated at the same table during trial and that he (Carlos) was found guilty by association. He somehow concludes that the jury found him not guilty of being a principal to the murder and, therefore, the jury concluded he did not procure Shavis to commit the murder.

We note that Carlos was never charged, tried, or adjudicated as a principal to murder. He was charged with and found guilty of conspiracy to commit murder. Carlos was convicted of committing an act in furtherance of the conspiracy to murder the victim; that conviction did not depend on the actual commission of the crime. *See State v. Knowles*, 392 So.2d 651 (La.1980). The crimes of conspiracy and principal do not require the same evidence to convict a defendant. *State v. Grace*, 10-1222 (La.App. 3 Cir. 4/6/11), 61 So. 3d 812, *writ denied*, 11-961 (La. 10/21/11), 73 So.3d 382. Carlos mistakenly concludes that the jury concluded he did not conspire with Shavis to murder the victim because he was not a principal to that murder. Indeed, the jury specifically found Carlos not guilty of second degree murder and thereby implicitly found him not guilty of being a principal to it.

8

Louisiana Code of Criminal Procedure art. 704 allows one trial of jointly indicted defendants unless the state chooses separate trials or "[t]he court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance." The burden lies with the defendant to provide "convincing evidence that justice requires a severance." *Bradford*, 367 So.2d at 747.

Severance is necessary when the co-defendants are so mutually antagonistic to each other that each must defend himself not only against the State but also against his co-defendant. *State v. Prudholm*, 446 So.2d 729 (La.1984). Such a showing of antagonism also mandates a showing of prejudice. *State v. Cedrington*, 98-253 (La.App. 5 Cir. 12/16/98), 725 So.2d 565, *writs denied*, 99-190 (La. 6/4/99), 743 So.2d 1249 and 99-431 (La. 6/25/99), 745 So.2d 1182.

The Supreme Court has explained when severance is proper:

> [A] district court should grant a severance . . . only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice . . . . When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but . . . less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.

*Zafiro v. United States*, 506 U.S. 534, 539, 113 S. Ct. 933, 938 (1993) (citations omitted). At the same time, our courts do not sanction "[p]iecemeal litigation . . . and, where the same witnesses would be called to testify, judicial economy dictates

that there be one trial." *State v. Hicks*, 17-696, p. 15 (La.App. 5 Cir. 10/17/18), 258 So.3d 1039, 1050, *writ denied*, 18-1938 (La. 4/15/19), 267 So.3d 1123.

The record on appeal does not indicate that the evidence submitted in Carlos's prosecution regarding his involvement in this crime would have been any different had he been tried separately from Shavis. Carlos and Shavis did not point fingers at each other or otherwise present antagonistic defenses. Carlos claims actual prejudice, incompetence of Shavis's counsel, and Shavis's unruly behavior, but he does not point out instances in the record that support his claim of an unfair trial. The jury heard and sorted all the evidence against both Carlos and Shavis and determined that Shavis alone actually committed the murder while Carlos's involvement was limited to conspiring about bringing the murder to fruition.

The trial court obviously was not satisfied by convincing evidence that justice required severance. The jury's verdict shows it understood the separate charges between the two defendants and applied the evidence to each of them individually. The supreme court affirmed that verdict. We do not find that actual prejudice resulted from the joint trial, and we will not disturb the trial court's sound discretion.

*Excessive sentence*

The trial court sentenced Carlos to twenty-five years at hard labor with benefit of parole. Carlos argues his sentence is excessive and violates his Eighth Amendment right against cruel and unusual punishment. Although Carlos stated a general objection to the sentence at the time of imposition, the record does not contain a motion to reconsider it. Thus, Carlos is limited to a bare claim of excessiveness on appeal. *See, e.g., State v. Tucker*, 22-735, p. 10 (La.App. 3 Cir. 5/31/23), 368 So.3d 187, 195. Accordingly, we do not consider Carlos's specific

arguments that the district court incorrectly relied upon an earlier case by this court

and that it misapplied La.Code Crim.P. art. 894.1.

In *State v. Soileau*, 13-770, pp. 4–5 (La.App. 3 Cir. 2/12/14), 153 So.3d

1002, 1005–06, *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261, this court

discussed the standard for reviewing claims of constitutional excessiveness:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado,* 367 So.2d 762 (La.1979). In *State v. Barling,* 00–1241, 00–1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042–43, *writ denied,* 01–838 (La.2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:
>
>> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell,* 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne,* 99–192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied,* 00–0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook,* 95–2784 (La.5/31/96); 674 So.2d 957, *cert. denied,* 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
>
> Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta,* 98–648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee,* 425 So.2d 1251 (La.1983)), *writ denied,* 99–433 (La.6/25/99), 745 So.2d 1183. In *State v. Smith,* 02–719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied,* 03–562 (La.5/30/03), 845 So.2d 1061, a panel of this court observed that:
>
>> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State*

> *v. Batiste,* 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook,* 95–2784 (La.5/31/96); 674 So.2d 957, 958.

Conspiracy to commit second degree murder carries a maximum sentence of thirty years. La.Code Crim.P. arts 14:26(C) and 14:30.1(B). The State sought the maximum sentence. Carlos's crime is one of the most egregious because it involves murder.

In pronouncing Carlos's sentence, the trial court noted Carlos had prior convictions "of a drug distribution charge in 1998, an aggravated criminal damage to property in 2000, and 2002, a bad check in 2008, several possessions of marijuana charges in 2009, and 2010, an OWI in 2011, and a couple of theft charges." He "was a special-education student who was medicated until 1998, the year he graduated from high school."

The trial court noted:

> [A] sentence is only considered excessive, if it is grossly disproportionate to the offense, or imposes needless and purposeless pain and suffering. A sentence is grossly disproportionate, if, when the crime and punishment are considered in the light of the harm done to society, it shocks the sense of justice.

After noting Carlos's expression of sympathy to the victim's family, the trial court imposed a sentence of twenty-five years at hard labor with benefit of parole.

In *State v. Sizemore*, 13-529, 13-530 (La.App. 3 Cir. 12/18/13), 129 So.3d 860, *writ denied*, 14-167 (La. 8/25/14), 147 So.3d 699, the defendant was convicted of conspiracy to commit second degree murder and sentenced to twenty-five years at hard labor. He was also convicted of second degree murder and sentenced to life imprisonment without benefits for that crime. The *Sizemore* defendant and his accomplice "conspired to lure the victim to a remote location

12

where the defendant shot the victim multiple times." *Id.* at 870. The court also noted the twenty-five-year-old defendant considered himself disabled. The defendant was discharged from the Marine Corps for medical reasons, but the trial court found him to be in excellent health with no history of drug or alcohol abuse. The defendant had a prior misdemeanor conviction, and the record indicated the defendant actually fired the shots that killed the victim. This court affirmed the twenty-five-year sentence for conspiracy.

Carlos's twenty-five-year sentence falls within the statutory range for his crime. Carlos's conspiracy with Shavis resulted in murder, and his sentence does not shock the sense of justice. It makes a "meaningful contribution to acceptable penal goals." *Id.* Accordingly, Carlos's argument of an excessive sentence lacks merit.

## CONCLUSION

Considering the assignments of error pretermitted on Carlos's first appeal, we find the trial court did not err in failing to order a mistrial based on the jury's polling slips. The court sufficiently established that the jury unanimously reached a verdict of guilty of conspiracy to commit second degree murder.

The trial court did not err in allowing Captain Stutes to testify as an expert based on his knowledge, skill, and experience. Captain Stutes provided meaningful guidance and explanation to the jury in explaining cellular mapping analysis and the CellHawk program.

Carlos failed to show how the trial court's denial of his requests to sever his trial from his brother's trial resulted in unfairness and actual prejudice. The jury's verdict of not guilty of second degree murder by Carlos while finding Shavis guilty of the charge shows it understood the evidence and applied it individually to the

co-defendant brothers. Finally, the twenty-five-year sentence with benefit of parole is not excessive and does not impose any cruel and unusual punishment.

Accordingly, we advise Carlos by way of this decision that he has two years from the date his conviction and sentence become final to seek post-conviction relief, including an application seeking an out-of-time appeal, pursuant to La.Code Crim.P. art. 930.8. We further affirm the decisions of the trial court.

**AFFIRMED.**