520 So.2d 911 (1987)
STATE of Louisiana, Plaintiff-Appellee,
v.
Darrell HARRIS, Defendant-Appellant.
No. CR 87-334.
Court of Appeal of Louisiana, Third Circuit.
November 4, 1987.
*912 Richard P. Weimer, Lafayette, for defendant-appellant.
Robert Diggs, Donald Landry, Asst. Dist. Attys., Lafayette, for plaintiff-appellee.
Before DOMENGEAUX, DOUCET and LABORDE, JJ.
DOUCET, Judge.
By a unanimous jury verdict, defendant, Darrell Wayne Harris, was convicted of three counts of armed robbery, a violation of La.R.S. 14:64. He was sentenced to twenty-five years at hard labor on each count with the sentences to be served concurrently without the benefit of parole, probation, or suspension of sentence. On appeal defendant raises three assignments of error.

FACTS
On the afternoon of March 14, 1983, James Mason and Garland Swearingen were in their adjoining hotel rooms at the Holiday Inn North in Lafayette. The two men, business associates, were in town on business. Mr. Swearingen left the hotel in his 1985 Lincoln Continental Town Car to go to the post office and the bank while Mr. Mason waited for a phone call. He left the door to one of the rooms open to allow in some fresh air. While he was in the bathroom, a black male came into the room and confronted him with a blue steel revolver. The man threatened to kill him, removed his eyeglasses, and took cash and jewelry from him. He was then made to lie on the floor between two beds and his hands and feet were bound.
Mr. Swearingen returned to find a black male standing in the doorway of his room. From the way the man was dressed he assumed he was a hotel employee. After the victim entered his room, the man drew a blue steel revolver and forced him to lie down on his stomach. The man relieved him of cash and various items of personal *913 property, including a University of Texas class ring. The man then began to jump and stomp on his back and neck. He questioned him as to the location of any more valuables, threatening to kill him if he discovered anything the victim failed to inform him of.
At one point, while the perpetrator was searching the adjoining room, Mr. Swearingen attempted to crawl over to his friend Mason to see if he was alright. The man re-entered the room, caught him moving, and said, "I'm going to kill you, Cowboy." He placed his left foot on Mr. Swearingen's neck and put the gun up to his head. Just at that moment, a vehicle pulled up outside the room causing the man to go to the window. He came back and led both men into the bathroom where he handcuffed them around the toilet. At one point he struck Mr. Swearingen with the revolver after the victim looked at him. The perpetrator then fled.
About the time the perpetrator left, Judson Ourso was standing at a coke machine near his hotel room. A black male approached him brandishing a revolver and robbed him of, among other things, an engraved watch. He then observed the man get into a Lincoln Continental Town Car and drive away. Mr. Ourso called the police and, as he was giving the officer some information, Mr. Mason and Mr. Swearingen, having worked themselves free by partially dismantling the toilet, ran up to them still handcuffed together. Mr. Swearingen reported that his Lincoln was missing and three days later, on March 17, 1986, a Florida state trooper stopped it for speeding. After discovering that the auto had been reported stolen, he ordered the driver out. The driver was the defendant, Darrell Wayne Harris. Inside the car was found a blue steel revolver and some of the property stolen from Mr. Mason, Mr. Swearingen, and Mr. Ourso, including the University of Texas class ring and Mr. Ourso's engraved watch.
At trial neither Mr. Mason, whose eyeglasses had been removed by the robber, nor Mr. Ourso, who was seventy-five years old, could identify the defendant as the man who robbed them. Mr. Swearingen, however, positively identified Darrell Wayne Harris as the man who robbed, beat, and threatened to kill him. He had "studied his face quite well" and there was no doubt in his mind that the defendant was the man who robbed him. The defendant claimed that he was not in Lafayette at the time of the robberies but had stolen Mr. Swearingen's automobile in New Orleans.
ASSIGNMENT OF ERROR NO. 1:
By this assignment of error, the defense contends that the trial court erred in denying his request for a mistrial. Defendant's request was based on alleged prosecutorial exclusion of black jurors from his jury. Defendant contends that his equal protection rights were violated when the prosecutor excluded black jurors for religious reasons or because they or their relatives were charged or convicted of crimes. The defendant argues that white jurors in similar circumstances were accepted.
In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court held that the equal protection clause forbids the prosecutor from excluding potential jurors solely on account of race, or on the assumption that black jurors as a group will be unable to impartially consider the state's case against a black defendant.
In Griffith v. Kentucky, ___ U.S. ____, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the Supreme Court concluded that the ruling in Batson applied retroactively to all cases, state or federal, pending or on direct review, or not yet final, with no exception for cases in which the new rule constitutes a "clear break" from the past.
Under Batson, the defendant has the initial burden of establishing a prima facie case of purposeful discrimination. To meet this burden the defendant must show that he is a member of a racially cognizable group, that the prosecutor has used peremptory challenges to remove from the venire members of defendant's race, and that the facts and any other relevant circumstances raise an inference that the *914 prosecutor used that practice to exclude veniremen on account of their race.
There is no question that the defendant is a member of a racially cognizable group he is black. There is also no question that the prosecutor used peremptory challenges to exclude some potential black jurors. Specifically, four blacks were excluded by state peremptory challenges. However, the third prerequisite for a prima facia case, namely the existence of facts and circumstances that raise an inference of exclusion based solely on race, has not been met.
In Batson, supra, the court stated that a "pattern" of strikes against black jurors included in a particular venire might give rise to such an inference. Similarly, the prosecutor's questions and statements during voir dire, and in exercising his challenges, may support or refute an inference of discriminatory purpose. These two examples are illustrative. Here, we find no evidence of an inference that the prosecutor intentionally excluded black jurors.
The prosecutor used eight peremptory strikes, four against white potential jurors, four against blacks. While the defense makes much of the fact that the prosecution eliminated four of six, or 60 percent of potential black jurors, the prosecutor accepted two, or 40 percent.
There is absolutely no discernable difference between the questions asked black and white potential jurors on voir dire, or statements made by the prosecutor in challenging black and white jurors.
The defendant contended that the prosecutor accepted white jurors with the same characteristics as peremptorily excluded black jurors, and this, he claimed, raised the inference that the prosecutor was in fact excluding black jurors solely for racial reasons.
The defendant alleges that Mr. Sampy, Mr. Dugas, Mrs. Carston and Mrs. Matthews were excluded solely based on their race. The prosecution stated it excluded Sampy, Carston, and Dugas because they had been convicted of crimes themselves, or had close relatives convicted of crimes. Mrs. Matthews was excluded because her husband was a pastor, and the prosecutor had previously had bad results with jury members who were married to members of the clergy. The prosecutor felt these persons were too sympathetic.
The defendant alleges that similarly "impaired" white jurors were accepted. A thorough review of the voir dire of all potential jurors reveals that potential white juror, Mr. Chriceol, was excluded because he had a fairly recent conviction, for a drug offense and a DWI. Two other white jurors who committed crimes, or whose relatives were involved in criminal activity, were peremptorily excluded by the defense.
Mr. Sampy had been recently convicted of DWI in the same parish, and prosecuted by the same office, as was prosecuting the case at bar. Mr. Sampy's brother also had a "run in" with police when he shot and killed someone.
Mrs. Carston had three nephews convicted of crimes "within the last three years."
Mr. Dugas' brother once shot a man and was arrested. He seemed, at least according to the prosecutor, to not trust the police. Also, when asked if he felt his brother was treated fairly by the system, he replied, "No."
The characteristics which render these jurors excludable do not exist in other jurors, or at least not to the extent that they exist in these jurors. Of course, the white potential juror, Mr. Chriceol, who had a personal conviction for drug offenses and DWI, like Mr. Sampy, was excluded by the state.
No other jurors were actual clergy members or married to clergy members, so defendant's intimation that white jurors who were married to clergy were allowed to serve is unsupported.
In conclusion, the defense failed to establish a prima facie case of purposeful discrimination based solely on race.
If the defendant had succeeded in proving a prima facie case, the burden would switch to the prosecution to show a racially neutral explanation for challenging these black jurors.
*915 The prosecution had adequate racially neutral reasons for excluding these jurors; Sampy's recent arrest and conviction by the Lafayette District Attorney and his brother's run-in with police, Carston's three nephews who were recently convicted, Dugas' brother's run-in with police and his negative attitude toward police credibility, and Mrs. Matthews' marriage to a member of the clergy, and the fact one of her relatives had been convicted.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 2:
By this assignment of error the defense alleges that the trial court erred in failing to comply with the La.C.Cr.P. art. 894.1 sentencing guidelines, and in sentencing him to an excessive sentence. Defendant was sentenced to twenty-five years on each of three counts of armed robbery. These sentences are to run concurrently and to be served without the benefit of parole, probation or suspension of sentence.
The sentencing guidelines enumerated in La.C.Cr.P. art. 894.1 provide the criteria within which to individualize a defendant's sentence, and appropriate criteria to measure whether a sentence within statutory limits is nevertheless excessive. State v. Richard, 450 So.2d 57 (La.App. 3rd Cir. 1984).
In State v. Owens, 457 So.2d 128 (La. App. 2nd Cir.1984), the appellate court ruled that although the trial court did not expressly relate, or check off, defendant's circumstances to particular factors listed in art. 894.1, the mention of defendant's circumstances were sufficient articulation.
In State v. Perry, 457 So.2d 1261 (La. App. 1st Cir.1984), the appellate court held that the trial court had sufficiently articulated reasons for the imposition of sentence, where it had placed great weight on defendant's prior convictions, and the seriousness of the crime for which he was convicted. The Perry court felt that the defendant's prior record, and the seriousness of the crime committed, outweighed any mitigating factors.
At the sentencing hearing in State v. Bethly, 449 So.2d 37 (La.App. 1st Cir.1984), the trial court considered that: 1) the victim was not harmed but might as well have been; 2) that the defendant was a first offender; and 3) that imprisonment would be hard on defendant's parents, but that defendant had no dependents. The higher court concluded that the trial court complied with art. 894.1, adequately stating for the record its considerations and factual basis for its sentence.
In State v. Cox, 474 So.2d 523 (La.App. 3rd Cir.1985), writ granted in part, 481 So.2d 1328 (La.1986), the appellate court found that the trial judge did not adequately comply with art. 894.1. The trial judge stated:
"Now the court because of the circumstances feels that a lesser penalty would deprecate the seriousness of the crime. The court feels that this type of crime is one that requires institutionalization. I too have read the presentence report, which of course is confidential, but there are some disclosures which convince me of what I am saying."
In vacating the sentence in Cox, the reviewing court noted that while art. 894.1 does not require the trial judge to articulate every aggravating or mitigating factor, the record must reflect that he adequately considered the guidelines in particularizing the sentence to this individual defendant. See State v. Morgan, 428 So.2d 1215 (La.App. 3rd Cir.1983), writ denied 433 So.2d 166 (La.1983). The record must also show that the trial court considered mitigating circumstances as well. State v. Davis, 449 So.2d 452 (La.1984); State v. Duncan, 420 So.2d 1105 (La.1982).
We note that the trial judge specifically found that a lesser sentence would have deprecated the seriousness of the defendant's crime, thus complying with La.C.Cr.P. art. 894.1(A). We also note that the factors listed under 894.1(B) are, according to the statute, to be considered by the court "in its determination of suspension of sentence or probation." (emphasis ours) The sentencing judge was prohibited by *916 law from granting a suspended sentence or probation in this case.
However, under the applicable jurisprudence, the trial judge failed to comply with the art. 894.1(B) guidelines. At the sentencing hearing, the trial judge failed to mention any mitigating factors. The defense pointed out that the defendant was a first offender. The trial judge sentenced the defendant solely based on the seriousness of the crime committed.
The failure of the trial court to comply with the sentencing guidelines of art. 894.1 does not require that the sentence be set aside if the record otherwise clearly illumines the trial court's sentencing choice and demonstrates the sentence is not arbitrary or excessive. State v. Jett, 419 So.2d 844 (La.1982); State v. Mitchell, 498 So.2d 1190 (La.App. 3rd Cir.1986); State v. Cox, 474 So.2d 523 (La.App. 3rd Cir.1985), writ granted in part 481 So.2d 1328 (La.1986); State v. Griffin, 455 So.2d 681 (La.App. 2nd Cir.1984), writ denied 458 So.2d 128 (La.1984); State v. Kellogg, 452 So.2d 291 (La.App. 2nd Cir.1984).
The trial judge generally has wide discretion in determining the sentence a defendant is to receive. The trial judge's determination will not be reversed absent a manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983); State v. Brooks, 431 So.2d 865 (La.App. 2nd Cir.1983).
A sentence is excessive if it is grossly out of proportion to the severity of the offense and nothing more than a needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Winzer, 465 So.2d 817 (La.App. 2nd Cir. 1985).
We find that the record clearly illumines the trial court's sentencing choice and that the sentence is not arbitrary or excessive. Defendant admitted to a previous criminal conviction while on the witness stand. The record clearly illustrates the brutal nature of, in particular, the robbery of Mr. Swearingen. This was not merely a brief street encounter, but an ordeal involving repeated death threats and a beating. It is also possible that, had the defendant not been disturbed by activity outside the hotel room, he would have murdered Mr. Swearingen. The defendant also struck the seventy-five year old Mr. Ourso. The trial judge specifically mentioned these factors as affecting his sentencing choice. A conviction for armed robbery carries a minimum sentence of five years and a maximum of up to ninety-nine years at hard labor. Thus, the defendant could have received a sentence of up to 297 years at hard labor. His effective sentence of twenty-five years is therefore in the lower range of possible sentences. Accordingly, we find no merit to this assignment of error.
ASSIGNMENT OF ERROR NO. 3:
By this assignment of error, defendant asks that we examine all errors patent on the face of the record. Even without making such an assignment of error this court is bound, under La.C.Cr.P. art. 920(2), to consider "an error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." We have examined the pleadings and proceedings, or "face" of the record, and find no errors.
For the reasons assigned we affirm the conviction and sentence of the defendant.
AFFIRMED.
DOMENGEAUX, J., concurs.