KING, Judge.
The issues presented by this appeal are whether the evidence presented at trial was sufficient to sustain a conviction for second degree murder and whether the trial court erred in denying defendant’s objection to the State’s rebuttal argument.
On February 24, 1989, by grand jury indictment, Lester E. Ebarb (hereinafter defendant) was charged with one count of second degree murder for the killing of Sondra Procell (hereinafter the victim) on February 13, 1989, in violation of La.R.S. 14:30.1. Defendant was arraigned on March 16, 1989, and pled not guilty. On April 19, 1989, a unanimous twelve member jury returned a verdict of guilty of second degree murder. Defendant was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Defendant appeals his conviction based on three assignments of error which are:
(1) Any and all errors discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence. C.Cr.P. Art. 920(2).
(2) That the trial court erred in denying defendant’s motion for a post verdict judgment of acquittal as the evidence was insufficient to sustain a conviction for second degree murder and was only sufficient to sustain a conviction for manslaughter.
(3) That the trial court erred in denying defendant’s objection to improper rebuttal argument by the State.
We affirm the defendant’s conviction and sentence.
FACTS
It is undisputed that on February 13, 1989, defendant shot and killed the victim. *767 Defendant shot the victim four times, three times in the head and once in the neck, with a .22 caliber rifle from a distance of 10 to 12 feet. The victim died immediately.
On the morning of February 13th, defendant picked the victim up from her house that she shared with her sister, Kathy Leone. At the same time, defendant retrieved his .22 rifle which was located at the victim’s house. The couple then proceeded to the trailer of the victim’s mother to have lunch with her family. Present at the trailer were Jackie Procell, the victim’s mother, Leo Windham, the mother’s boyfriend, Jackie Fay Remedies, the victim’s sister, and two small children. In the early afternoon, defendant and the victim had an argument in the front yard of her mother’s residence. Although no one witnessed the argument, there was testimony that the people at the trailer heard the victim yelling for her “Mama”. The victim’s mother and sister rushed to the front yard to see what was happening and found defendant on top of the victim beating her. When they pulled the two apart, defendant stated that he was sorry and that he would not further hurt the victim.
The victim was taken inside the trailer where her mother helped her clean herself and change her bloodied blouse. Defendant followed them inside. Believing everything was then allright, the family members left defendant and the victim alone in the trailer while they went to the backyard to eat. There was testimony by Leo Windham, Jackie Procell, and Jackie Remedies that they could see the victim in the trailer sitting at a table, talking to the defendant, but they did not know what was being discussed. Sometime between fifteen to forty-five minutes after going outside, the three adults heard gunshots from within the trailer. They rushed inside and found the victim, who had been shot, seated in a chair at the table, and saw defendant fleeing from the scene. Defendant was subsequently apprehended several days later, on February 17, 1989, while he said he was on his way to turn himself in to the police. Testimony also revealed that a gold cross and chain which the victim had given to defendant was later discovered on the victim’s grave on February 16, 1989 after her burial. There was also testimony presented that defendant may have been drinking beer on the day of the shooting; however, the amount was unknown and the evidence showed that defendant did not appear intoxicated.
LAW
Defendant’s first assignment of error is any and all errors discoverable on the face of the record pursuant to La.C.Cr.P. Art. 920(2). By this assignment of error, defendant asks that we examine the record for all errors patent on the face of the record. Even without making such an assignment of error this court is bound, under La.C. Cr.P. Art. 920(2), to consider “an error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.” State v. Harris, 520 So.2d 911 (La.App. 3 Cir.1987). We have examined the pleadings and proceedings making up the entire record and find no errors.
Defendant argues in his second assignment of error that the trial judge erred in denying his post-verdict judgment of acquittal. Defendant claims that the evidence was insufficient to sustain a conviction for second degree murder. Instead, defendant contends that the evidence was only sufficient to sustain a conviction of manslaughter.
The critical inquiry on review of the sufficiency of evidence to support a criminal conviction is whether the evidence could support a finding of guilt beyond a reasonable doubt. The relevant question on appeal is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Edwards, 400 So.2d 1370 (La.1981); State v. Senegal, 542 So.2d 792 (La.App. 3 Cir.1989). In order to convict for second degree murder the State must prove: (1) the killing of a human *768 being, and (2) specific intent to kill or inflict great bodily harm. La.R.S. 14:30.1.
In this case, there is no dispute that defendant killed the victim. The facts indicate that the defendant shot the victim four times and that these wounds were the cause of her death. One could conclude that defendant had the requisite specific intent to kill the victim by the fact that he shot her four times. Although the murder weapon was never located, the testimony at trial connected defendant with his .22 caliber rifle in the trailer. Defendant was also the only other person other than the victim in the trailer at the time of the shooting and was seen fleeing the scene immediately following the shooting. These facts indicate that there was sufficient evidence presented to prove beyond a reasonable doubt that defendant killed the victim by shooting her with the specific intent to kill or inflict great bodily harm.
Defendant argues that the jury should have returned a verdict of manslaughter. Defendant contends that his act of killing was an act of “sudden passion” or “heated blood.” The presence of “sudden passion” or “heated blood” are mitigating circumstances which may reduce second degree murder to manslaughter. State v. Lombard, 486 So.2d 106 (La.1986), after remand, 501 So.2d 889 (La.App. 5 Cir.1987); State v. Maddox, 522 So.2d 579 (La.App. 1 Cir.1988). It is incumbent upon the defendant to prove the mitigating factors by a preponderance of the evidence. State v. Lombard, sufra. As a result, in reviewing defendant’s assertion, the court must determine whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigating factors were not established by a preponderance of the evidence. State v. Lombard, supra.
Defendant did not prove “sudden passion” or “heated blood” sufficient to undermine the intent element of second degree murder. The record indicates that defendant and the victim fought prior to the shooting incident. The record also reveals that defendant made an apology and that at least fifteen minutes elapsed between the fight and the shooting. The victim’s family members felt the situation was under control, as evidenced by the fact that they left defendant and the victim talking together in the trailer while they went outside to eat. There was no evidence presented of an argument or struggle between defendant and the victim while they were alone inside the trailer. Defendant did not prove that he was sufficiently provoked to deprive him of his self-control and cool reflection. See, LSA-R.S. 14:31(1). The only explanation offered for the “sudden passion” was allegedly that the victim had decided not to marry defendant. Defendant also attempts to suggest that the fact that he left his cross and chain on the victim’s grave was a sign of remorse and evidence of the “cooling of the blood.” The jury was apparently not impressed with this evidence and neither are we.
The record reflects that the jury was adequately charged as to the responsive verdict of manslaughter and concerning provocation sufficient to disprove the intent to commit second degree murder. It is evident that the jury did not find the “sudden passion” or “heated blood” necessary for a verdict of guilty of manslaughter. We find that the jury could have found that the mitigating factors necessary to reduce second degree murder to manslaughter were not established by defendant by a preponderance of the evidence. For these reasons, we find that the trial court did not err in denying defendant’s post-verdict judgment of acquittal.
In his third and final assignment of error, defendant contends that the trial court erred in denying his objection to improper rebuttal argument by the State.
In this case, defense counsel requested, and the trial court informed the jury as to the mandatory sentence for second degree murder. Defense counsel referred to this penalty during his closing argument to the jury when he stated:
“The Judge is going to charge you that the penalty for second-degree murder is mandatory life imprisonment without *769 benefit of probation, parole or suspension of sentence.
That is what is going to happen to Lester [defendant] if you return a verdict of guilty of second-degree murder.” Defendant’s counsel then argued to the jury that if his client was guilty of anything that he was only guilty of manslaughter by stating:
“There is ample evidence that this was a manslaughter.”
Defense counsel then argued to the jury the evidence which the defense contended proved that defendant had acted in “sudden passion” or “heated blood”.
In the State’s rebuttal closing argument, the District Attorney made the following remarks pertaining to the mandatory penalty for second degree murder to which defense counsel objected:
“MR. BURKETT: Counsel [referring to defense counsel] made a mention about the penalties. Now, our Supreme Court has said that a jury has the right to hear about a mandatory penalty. But personally, the penalty is not up to you. It’s up to the Court.
MR. BLANCHARD: Your Honor, I am going to object to that statement. And I would just like to argue the reasons why after the jury is out.
THE COURT: You may.
MR. BURKETT: (Continuing)
Again, I reiterate, it’s not up to you, it’s up to the Court. There is a mandatory penalty when you are talking second-degree murder. There is a penalty of probation up to twenty-one years in the discretion of the judge when we are talking manslaughter.
I didn’t bring this up, the defense lawyer brought it up.
Even though it’s mandatory penalties, there are other provisions of the law that sometimes take effect. That’s why I think it’s inappropriate that it should even be mentioned.”
Defendant alleges on appeal that the State improperly argued the sentence if defendant was convicted of manslaughter as a possible probated sentence of up to twenty-one years. Because of this statement, defendant contends that he was prejudiced in the eyes of the jury which resulted in the verdict of his being found guilty of second degree murder. However, we note that defense counsel made no contemporaneous objection to this remark by the District Attorney.
While counsel for defendant promptly objected to the remark about the mandatory penalty made by the State during rebuttal argument, counsel did not contemporaneously move for a mistrial or request the court to admonish the jury to disregard the State’s remark. Defense counsel also did not contemporaneously object to or move for a mistrial when the District Attorney made a statement about a possible probated sentence for manslaughter. It was not until after the jury was instructed on the law by the court and had retired to begin deliberations that defense counsel made his motion for a mistrial and presented his arguments in support of the motion. The trial court denied the motion.
LSA-C.Cr.P. Art. 841 provides, in part, that:
“An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence .... ”
The Louisiana Supreme Court has recognized that an objection or a motion for a mistrial is timely when the motion is made upon conclusion of the closing argument or shortly thereafter. State v. Gaines, 347 So.2d 1153 (La.1977); State v. Lee, 346 So.2d 682 (La.1977). However, in the present case, defense counsel did not move for a mistrial until after the jury had been instructed and retired to begin deliberating. This was not at the conclusion of the closing argument or even shortly thereafter.
The purpose of the contemporaneous objection rule is twofold: (1) to put the trial judge on notice of any alleged irregularity so that he may immediately cure the problem and (2) to prevent a defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by timely objection and request for an admonition or mis *770 trial. State v. Thomas, 427 So.2d 428 (La.1982); State v. Falls, 544 So.2d 27 (La.App. 4 Cir.1989). Requiring a contemporaneous motion for a mistrial prevents defense counsel from sitting on an error and gambling unsuccessfully on the verdict. State v. Arvie, 505 So.2d 44 (La.1987).
Because there was no contemporaneous objection to the District Attorney’s remark about the possibility of a probated sentence for a conviction of manslaughter and because the motion for a mistrial, in this case, was not made until after the court had instructed the jury and retired it to deliberate, the court was, in effect, denied the opportunity to admonish the jury and immediately cure any alleged prejudicial effect the District Attorney’s remarks may have had. For these reasons, we find that the defendant’s motion for a mistrial was untimely and, therefore, on appeal we cannot consider the trial court’s denial of this motion as error. La.C.Cr.P. Art. 841.
However, even if we find defense counsel’s motion for a mistrial was properly and timely made, we still do not find that the trial court should have granted the motion.
Even if the State’s remarks were arguably improper, they do not fall within the specific grounds for a mistrial under La.C.Cr.P. Art. 770. Nor did the State’s remark amount to prejudicial conduct that would make it impossible for the defendant to obtain a fair trial, mandating a mistrial under La.C.Cr.P. Art. 775. The trial court could have denied the motion for a mistrial and admonished the jury to disregard the remarks. La.C.Cr.P. Art. 771.
The trial court, in its instructions given to the jury immediately after closing arguments, specifically charged and instructed the jury that “[sentencing is not the function of the jury. It is solely and exclusively the duty and responsibility of the Court.” The court further cautioned and instructed the jury that “[ojpening statements and the closing arguments are not to be considered as evidence.” We find that these instructions to the jury, which immediately followed the attorney’s closing arguments, and before defendant moved for a mistrial, sufficiently cured any prejudicial effect that the State’s remarks may have had.
It is well settled that a verdict will not be overturned on the basis of improper prosecutorial remarks unless the reviewing court is thoroughly convinced that the jury was influenced by the remarks and that the remarks contributed to the verdict. State v. Kyles, 513 So.2d 265 (La.1987); State v. Delahoussaye, 534 So.2d 76 (La.App. 3 Cir.1988).
The remarks made by the State in its rebuttal argument were made in response to defendant’s closing argument when his counsel argued the mandatory penalty for second degree murder and argued about the possible responsive verdict of manslaughter. The trial court instructed the jury that the attorney’s remarks in closing arguments were not to be considered as evidence.
This court, after carefully reviewing and considering the substantial evidence against defendant contained in the record, cannot say that it is thoroughly convinced that the remarks made during the State’s rebuttal argument influenced the jury or contributed to its verdict. For these reasons, we find that defendant’s third assignment of error has no merit.
For these reasons, the conviction and sentence of defendant are affirmed.
AFFIRMED.